**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**(Miami Division)**

**Case Nos. 07-22459 & 08-21063 (JORDAN/MCALILEY)**

| | |
|---|---|
| ELOY ROJAS MAMANI, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| GONZALO SÁNCHEZ DE LOZADA | ) |
| SÁNCHEZ BUSTAMANTE, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| JOSÉ CARLOS SÁNCHEZ BERZAÍN, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**DEFENDANTS' MOTION FOR CERTIFICATION**
**FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)**

Alan M. Dershowitz (*pro hac vice*)
Jack Landman Goldsmith III (*pro hac vice*)
1563 Massachusetts Avenue
Cambridge, MA  02138
(617) 495-4617 (Dershowitz)
(617) 495-7855 (facsimile)
(617) 495-9170 (Goldsmith)
(617) 496-4863 (facsimile)
 dersh@law.harvard.edu
 jgoldsmith@law.harvard.edu

Kevin M. Downey (*pro hac vice*)
Ana C. Reyes (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
(202) 434-5000
(202) 434-5029 (facsimile)
 kdowney@wc.com
 areyes@wc.com

Mark P. Schnapp, Esq. (Fl. Bar No. 501689)
Eliot Pedrosa, Esq. (Fl. Bar No. 182443)
GREENBERG TRAURIG, P.A.
1221 Brickell Avenue
Miami, FL  33131
(305) 579-0743
(305) 579-0717 (facsimile)
 schnappm@gtlaw.com
 pedrosae@gtlaw.com

Dated:  December 9, 2009

*Counsel for Defendants Sánchez de Lozada*
*and Sánchez Berzaín*

## TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................... ii

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 3

I.        THE ORDER INVOLVES CONTROLLING QUESTIONS OF LAW THAT
SHOULD BE CERTIFIED UNDER SECTION 1292(B). ..................................... 3

II.      THERE ARE SUBSTANTIAL GROUNDS FOR A DIFFERENCE OF OPINION
ON CONTROLLING QUESTIONS OF LAW. ..................................................... 5

      A.    The Political Question Doctrine. .............................................................. 5

            1.    The relationship between the State Department's "Notice" and its prior
pronouncements concerning these events ...................................... 5

            2.    The absence of judicially manageable standards ......................... 9

      B.    The Act-of-State Doctrine. ..................................................................... 11

      C.    The Alien Tort Statute Claims. .............................................................. 13

III.     AN IMMEDIATE APPEAL WILL MATERIALLY ADVANCE THIS
LITIGATION. ................................................................................................... 15

IV.    A STAY PENDING APPEAL IS WARRANTED. ............................................... 18

CONCLUSION .................................................................................................................. 18

## **TABLE OF AUTHORITIES**

### CASES

*Aktepe v. United States*,
    105 F.3d 1400 (11th Cir. 1997) .............................................................10

*Arriba Ltd. v. Petroleos Mexicanos*,
    962 F.2d 528 (5th Cir. 1992) ................................................................4

*Banco Nacional de Cuba v. Sabbatino*,
    376 U.S. 398 (1964)...............................................................11, 12

*Beaty v. Rep. of Iraq*,
    No. 03-0215, 2007 WL 1169333 (D.D.C. Apr. 19, 2007), *aff'd mem.*, No. 07-7057
    (D.C. Cir. Nov. 21, 2007), *rev'd*, 129 S. Ct. 2138 (2009) ...............................4, 13

*Belhas v. Ya'alon*,
    515 F.3d 1279 (D.C. Cir. 2008)................................................................12

*Benedict v. Town of Newburgh*,
    95 F. Supp. 2d 136 (S.D.N.Y. 2000).........................................................18

*Blinco v. Green Tree Servicing, LLC*,
    366 F.3d 1249 (11th Cir. 2004) .........................................................15, 18

*Carmichael v. Kellogg, Brown & Root Servs., Inc.*,
    572 F.3d 1271 (11th Cir. 2009) .........................................................9, 10

*Corrie v. Caterpillar*,
    403 F. Supp. 2d 1019 (W.D. Wash. 2005), *aff'd*, 503 F.3d 974 (9th Cir. 2007) ...............8, 14

*Credit Suisse v. U.S. Dist. Court*,
    130 F.3d 1342 (9th Cir. 1997) .............................................................13

*Dial v. Healthspring of Ala., Inc.*,
    612 F. Supp. 2d 1205 (S.D. Ala. 2007), *rev'd*, 541 F.3d 1044 (11th Cir. 2008)....................18

*Doe I v. Israel*,
    400 F. Supp. 2d 86 (D.D.C. 2005) .........................................................12

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982)...............................................................18

*Hilao v. Estate of Marcos (In re Estate of Marcos)*,
    25 F.3d 1467 (9th Cir. 1994) .............................................................11

*In re Arakis Energy Corp. Sec. Litig.*,
    No. 95 CV 3431, 2001 WL 1590512 (E.D.N.Y. Oct. 31, 2001) ............................................16

*Lamont v. Schultz*,
    748 F. Supp. 1043 (S.D.N.Y. 1990), *aff'd sub nom. Lamont v. Woods*, 948 F.2d 825
    (2d Cir. 1991)..................................................................................................................4

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936).........................................................................................................18

*Matar v. Dichter*,
    500 F. Supp. 2d 284 (S.D.N.Y. 2007), *aff'd*, 563 F.3d 9 (2d Cir. 2009) ...............................12

*McFarlin v. Conseco Servs., LLC*,
    381 F.3d 1251 (11th Cir. 2004) ............................................................................... *passim*

*McMahon v. Presidential Airways, Inc.*,
    502 F.3d 1331 (11th Cir. 2007) ....................................................................................9, 10

*Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*,
    361 F.3d 11 (1st Cir. 2004).............................................................................................16

*Rasoulzadeh v. Associated Press*,
    574 F. Supp. 854 (S.D.N.Y. 1983), *aff'd mem.*, 767 F.2d 908 (2d Cir. 1985) ......................13

*Schneider v. Kissinger*,
    310 F. Supp. 2d 251 (D.D.C. 2004), *aff'd*, 412 F.3d 190 (D.C. Cir. 2005)...........................10

*Shochet Sec., Inc. v. First Union Corp.*,
    663 F. Supp. 1035 (S.D. Fla. 1987) ................................................................................18

*Smith v. Reagan*,
    663 F. Supp. 692 (E.D.N.C. 1987), *rev'd*, 844 F.2d 195 (4th Cir. 1988)................................4

*Sosa v. Alvarez-Machain*,
    542 U.S. 692 (2004)........................................................................................................13

*Tismo v. M/V Ippolytos*,
    776 F. Supp. 928 (D.N.J. 1991), *aff'd mem.*, 947 F.2d 937 (3d Cir. 1991) ...........................13

*Ungaro-Benages v. Dresdner Bank AG*,
    379 F.3d 1227 (11th Cir. 2004) ........................................................................................7

*Vieth v. Jubelirer*,
    541 U.S. 267 (2004).........................................................................................................9

*Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*,
    517 F.3d 104 (2d Cir. 2008), *cert. denied*, 129 S. Ct. 1524 (2009).......................................14

*Wei Ye v. Jiang Zemin*,
    383 F.3d 620 (7th Cir. 2004) ................................................12

*Williams v. Curtiss-Wright Corp.*,
    694 F.2d 300 (3d Cir. 1982)................................................4

*Yamaha Motor Corp., U.S.A. v. Calhoun*,
    516 U.S. 199 (1996)................................................2

## STATUTES

28 U.S.C. § 1292 ................................................ *passim*

28 U.S.C. § 1350 ................................................1, 13

28 U.S.C. § 1367 ................................................4, 15

## OTHER AUTHORITIES

22 C.F.R. § 172.4 (2009) ................................................17

16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and
    Procedure § 3930, at 424 n.19 (2d ed. 1996) ................................................4, 5

## <u>INTRODUCTION</u>

Defendants respectfully move to certify for interlocutory appeal under 28 U.S.C. § 1292(b) (2006) this Court's Order of November 25, 2009,[1] which rejected defendants' arguments for dismissal under the political question doctrine, the act-of-state doctrine, and the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350 (2006).  Contemporaneous with the filing of this motion, Defendants are taking an appeal as of right from this Court's denial of their immunity claims, and, as a result, the Eleventh Circuit will likely have pendent or direct appellate jurisdiction over this Court's disposition of the political question, act-of-state, and ATS issues. Defendants are therefore filing this Section 1292(b) petition only out of an abundance of caution, to eliminate any potential doubt as to the immediate appealability of those issues.

Defendants respectfully submit that Section 1292(b) certification is plainly warranted.  As the Court recognized in its Order, several of the issues presented by the case involve close and unsettled questions of law.  *See* D.E. 135 ("Op.") at 7 (noting that the political question doctrine is in "disarray"); *id.* at 18 (suggesting that the application of second factor of act-of-state doctrine was a "closer call"); *id.* at 24 (observing that "it is not clear what constitutes an extrajudicial killing [under the ATS]").  By any measure, this is an exceptional case that implicates important questions regarding the role of American courts in hearing claims against a democratically elected former head of state and American ally.  The Eleventh Circuit should have the opportunity to address these unresolved legal issues before litigation proceeds any further; each issue involves a critical challenge that, if resolved in defendants' favor, would end or materially advance this litigation.

---

[1] The Court originally issued its opinion on November 9, 2009, D.E. 131, but following a motion for clarification by the plaintiffs, D.E. 133, the Court issued a corrected opinion on November 25, 2009, D.E. 135.  (All docket entries refer to Case 07-22459).

Section 1292(b) provides a means to forestall protracted discovery and motions practice in precisely this situation, allowing an order to be certified for interlocutory appeal when the court finds: "[1] that such order involves a controlling question of law [2] as to which there is a substantial ground for difference of opinion and [3] that an immediate appeal from that order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b) (2006). The court need only identify a single issue that meets this test to certify its order; once an order is certified under Section 1292(b), the appellate court has the power to "review the entire order, either to consider a question different than the one certified as controlling or to decide the case despite the lack of any identified controlling question."  *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996) (quotations omitted); *accord McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1256, 1264 (11th Cir. 2004).

Here, the requirements of Section 1292(b) are amply met—not just for one issue, but for several.  Specifically, there are substantial grounds for difference of opinion on the following four unresolved legal issues:  (1) how the notice filed by the State Department affects the political question analysis; (2) whether, under the political question doctrine, judicially manageable standards exist to adjudicate claims involving the conduct of a foreign military in an armed uprising; (3) whether the act-of-state doctrine is applicable; and (4) whether there is a well-recognized international norm governing the disproportionate use of force for purposes of the ATS.

Proceeding to trial in this case without first obtaining an appellate ruling on defendants' jurisdictional challenges would risk years of wasteful litigation.  Because this matter involves events that took place entirely in Bolivia, discovery would be complex, time-consuming, and expensive; it would involve ten plaintiffs, sixty-seven alleged deaths, four

hundred alleged injured victims, and countless witnesses.  This case, in short, presents precisely the types of legal questions that, due to their importance and for the sake of efficiency, should be resolved by an appellate court sooner rather than later.  In order to ensure such expeditious resolution, Section 1292(b) certification should be granted.

## ARGUMENT

I.   **THE ORDER INVOLVES CONTROLLING QUESTIONS OF LAW THAT SHOULD BE CERTIFIED UNDER SECTION 1292(B).**

A "controlling question of law" is "a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine" that does not involve the "application of settled law to fact."  *McFarlin*, 381 F.3d at 1258.  The Eleventh Circuit distinguishes between the weighing of facts at the summary judgment stage—which involves deep inquiry into the record and all elicited facts—and threshold legal challenges, as to which Section 1292(b) certification is appropriate.  *Id.* at 1257-58.

In *McFarlin*, the Eleventh Circuit quoted at length from the legislative history of 28 U.S.C. § 1292(b), describing the following example as exactly "the type of situation Congress intended § 1292(b) to address":

> [I]n a recent case a motion to dismiss for want of jurisdiction was filed in the district court early in the proceedings.  The district court denied the motion and the matter then proceeded to trial.  The disposition of that case took almost 8 months.  Upon final order the case was appealed and the court of appeals determined that the district court did not have jurisdiction and entered an order accordingly.  Had [Section 1292(b)] been in effect at that time, the district judge could have stated in writing his opinion that the motion was controlling and the defendant could thereupon have made application to the court of appeals for a review of the order denying the motion.  Had the court of appeals entertained such a motion and reached the conclusion which it ultimately did, it would have resulted in a saving of the time of the district court and considerable expense on the part of the litigants.

*Id.* at 1257 (quoting S. Rep. No. 85-2434 (1958), *reprinted in* 1958 U.S.C.C.A.N. 5255, 5256);

*see also* 16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and

Procedure § 3930, at 424 n.19 (2d ed. 1996) ("Wright & Miller") (identifying lack of subject

matter jurisdiction as one of the questions that "clearly qualified" for interlocutory appeal under

Section 1292(b)).

   In this case, as in the case recounted by Eleventh Circuit, the questions presented

are open legal questions that could resolve the entire litigation.  The political question and act-of-

state doctrines present jurisdictional issues that would end the case if resolved in defendants'

favor; for that reason, courts routinely grant Section 1292(b) certification on the applicability of

those doctrines.  *See, e.g.*, *Beaty v. Rep. of Iraq*, No. 03-0215, 2007 WL 1169333, at *2 (D.D.C.

Apr. 19, 2007) (granting Section 1292(b) certification from order denying motion to dismiss

based on political question and act-of-state doctrines), *aff'd mem.*, No. 07-7057 (D.C. Cir. Nov.

21, 2007), *rev'd*, 129 S. Ct. 2138 (2009); *Lamont v. Schultz*, 748 F. Supp. 1043, 1057 (S.D.N.Y.

1990) (certifying order for appeal *sua sponte* in order to resolve "threshold" question of political

question doctrine), *aff'd sub nom. Lamont v. Woods*, 948 F.2d 825 (2d Cir. 1991); *Smith v.

Reagan*, 663 F. Supp. 692, 696-97 (E.D.N.C. 1987) (certifying order for appeal on political

question doctrine), *rev'd*, 844 F.2d 195 (4th Cir. 1988); *Arriba Ltd. v. Petroleos Mexicanos*, 962

F.2d 528, 530 n.1 (5th Cir. 1992) (highlighting that district court had certified order under

Section 1292(b) denying motion to dismiss based on act-of-state doctrine); *Williams v. Curtiss-

Wright Corp.*, 694 F.2d 300, 301 (3d Cir. 1982) (same).  On the facts of this case, the ATS issue

is also effectively outcome-dispositive:  the ATS is the basis for federal court jurisdiction, and

the pendent state-law claims could be dismissed in the absence of jurisdiction over the ATS-

based claims.  *See* 28 U.S.C. § 1367(c) ("district courts may decline to exercise supplemental

jurisdiction . . . [when] the district court has dismissed all claims over which it has original

jurisdiction").

## II.      THERE ARE SUBSTANTIAL GROUNDS FOR A DIFFERENCE OF OPINION ON CONTROLLING QUESTIONS OF LAW.

A district court need not doubt the correctness of its ruling to certify an order; it

need only recognize that no authority squarely resolves the issue and there is substantial room for

difference of opinion.  *See McFarlin*, 381 F.3d at 1258-60.  When a court makes this

determination, "[t]he level of uncertainty required to find a substantial ground for difference of

opinion should be adjusted to meet the importance of the question in the context of the specific

case."  16 Wright & Miller § 3930, at 422.  Thus, as here, if "proceedings that threaten to endure

for several years depend on an initial question of jurisdiction, limitations, or the like, certification

may be justified at a relatively low threshold of doubt."  *Id*.

### A.      The Political Question Doctrine.

As this Court recognized in its Order, the political question doctrine is notoriously

unclear and difficult to apply:  "The D.C. Circuit remarked two decades ago that '[n]o branch of

the law of justiciability is in such disarray as the doctrine of the 'political question.''  Today, the

doctrine is not much clearer."  Op. at 7 (citation omitted).  Each of the six factors that constitute

the test for the applicability of the political question doctrine potentially provides an independent

basis for dismissal.  *See* Op. at 8 (citing *McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331,

1358 (11th Cir. 2007)).  Here, at least two of those factors raise difficult legal questions with

substantial grounds for difference of opinion.

#### 1.      *The relationship between the State Department's "Notice" and its prior pronouncements concerning these events*

After months of internal debate, *see* D.E. 78, 100, the State Department filed a

letter in this case stating it could take no position on whether this suit should be dismissed,

explaining that relations with the current Bolivian regime are "complex and difficult" and that taking a position would be "inopportune diplomatically."  D.E. 107 ("Notice"), at 2.  There is substantial ground for a difference of opinion over whether this statement should be treated as a lack of interest by the political branches—as this Court appeared to treat it—or rather as an affirmative basis for concluding that this is a fraught, tense political area where the courts should not intervene.

Defendants provided ample evidence that the Executive publicly pronounced its support for the democratically elected Lozada government's actions during the events alleged in the Complaint and thereafter.  *See* D.E. 81, at 11–13, 16–17.  For example, at the request of a Congress considering funding priorities for Latin American countries, the State Department found that Bolivia's actions in late 2003 were appropriate and "commensurate" in light of the threat posed.  *See* D.E. 81 Ex. 2, at FOIA-012.  Contemporaneous cables from the American Embassy in Bolivia reported that the Lozada government had properly "acted within its mandate" in dealing with the uprising.  D.E. 81 Ex.10, at FOIA-026; *see generally* D.E. 81 Ex. 10.  And after the events in question, the State Department issued a press release "commend[ing]" defendant Lozada "for his commitment to democracy and to the well being of his country," D.E. 81 Ex. 26, and granted asylum to defendant Berzaín.[2]

---

[2] Whether the Executive's decision to grant Minister Berzaín asylum bars this lawsuit is itself a controlling question of law about which there is substantial grounds for difference of opinion—indeed, there is no settled caselaw on either side that authoritatively resolves the issue.  The basis for finding in defendants' favor on this question is straightforward:  because the United States granted asylum to Minister Berzaín after finding he would be persecuted in Bolivia for his political opinions, and because he could not have been granted asylum had the Executive found that he himself had persecuted others, plaintiffs should not be able to try Minister Berzaín in a U.S. court for the same conduct the Executive has determined he should not be tried for in Bolivia.  *See* D.E. 81, at 16-17.

Notwithstanding the foregoing pronouncements, this Court held that this suit did not implicate a decision of the Executive because "[t]he United States declined to intervene in this case after it was invited to do so."  Op. at 14.  In holding that the political question doctrine was inapplicable, the Court repeatedly stressed the government's silence.  *See* Op. at 15 (suggesting that Defendants' other political question arguments "do not carry the day in light of the United States' silence"); *id.* at 16 (concluding that "the government's decision not to take a position indicates the absence of 'pronouncements' by the political branches regarding the resolution of the plaintiffs' international law claims").  In essence, the Court held that the Notice erased the prior statements by the Executive, and that the filing of the Notice itself, while not determinative, "counsels against application of the political question doctrine."  Op. at 15.

The Notice did not disavow the Executive's numerous previous statements and decisions in support of the Lozada government.  D.E. 107.  Rather, the State Department explained that it will often "'wish to refrain from taking an official position, particularly at a moment that would be dictated by the development of private litigation but might be inopportune diplomatically.'"  Notice at 2 (quoting *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 436 (1964)).  In addition, it expressly requested that this Court *not* view its Notice as reflecting the government's assent to this case's proceeding:  "That the United States has filed this Notice . . . *should not be construed as an expression that the United States approves of the litigation proceeding* in the courts of this country or that the United States takes a position on the merits of dispositive issues raised by the parties and now pending before the Court."  Notice at 2 (emphasis added).  Despite this express instruction (which is "entitled to deference," *Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227, 1236 (11th Cir. 2004)), the Court concluded the Executive's non-substantive response provided a reason for denying defendants' political

question challenge and other jurisdictional defenses.  *E.g.*, Op. 14-16.  The Eleventh Circuit should be given the opportunity, at this early stage, to determine whether this conclusion was correct and whether, if the litigation were to proceed, it could implicate the earlier pronouncements of the Executive.

Certification on this question is appropriate because there are substantial grounds for a difference of opinion regarding whether prior Executive statements or actions are implicitly nullified (such that a suit on the same issues will not implicate them) by a later statement of the Executive, at least where that later statement merely declared that the Executive was unable to take a position in pending litigation because the current political position was complex and difficult.  For example, in *Corrie v. Caterpillar*, the government filed no statement of interest at all, but the district court nevertheless held that political question dismissal was appropriate, in part because it did not want to interfere with prior executive policies.  403 F. Supp. 2d 1019, 1032 (W.D. Wash. 2005), *aff'd*, 503 F.3d 974 (9th Cir. 2007).[3]  The Notice here readily supports an inference that this is a matter consigned to executive discretion where the Executive is acutely sensitive of its prior public statements on the matter.[4]  This Court took a contrary view, deeming the State Department's non-substantive Notice a signal that permitting the case to proceed would

---

[3] There, the Executive had not previously restrained trade with Israel during the time defendants sold bulldozers to Israel, and the district court refused to "impinge directly upon the prerogatives of the executive branch of government."  *Corrie*, 403 F. Supp. 2d at 1032.

[4] To illustrate, suppose the Executive continued to support the defendants' action and believed this case should not proceed, but was concerned that publicly reaffirming its support for the prior administration would lead to riots and anti-American sentiment in Bolivia, endangering American personnel there and further destabilizing the region.  *Cf.* D.E. 94 Ex. 49, at 2 (The grant of asylum by the United States to Defendant Berzaín "sparked violent demonstrations" in La Paz; "[t]housands of protestors tried to storm the U.S. Embassy, but police repulsed them with tear gas.").  A statement that the State Department was unable to take a position in litigation would scarcely indicate a lack of interest—or the lack of a very delicate political question.

not interfere with executive policies or pronouncements.  Whether this conclusion is accurate is a question that should be certified for appellate review.

### 2.     *The absence of judicially manageable standards*

This Court held that the "second [political question] factor does not support applying the political question doctrine to bar the plaintiffs' claims," Op. at 13, explaining that it was not being "asked to pass any judgment on the United States' military or political actions, decisions, or policies.  Rather, the issues are whether the defendants' alleged acts constitute extrajudicial killings and crimes against humanity under binding customary international norms." *Id.* at 12–13.  Central to the Court's holding is the conclusion that the military or political actions, decisions, or policies of a foreign sovereign—as opposed to American military actions— can be adjudged by judicially discoverable or manageable standards.  *See* Op. at 12 (distinguishing *Carmichael*, which found a political question, from *McMahon*, which did not, on the basis that *McMahon* did not involve the American military).  Whether federal courts lack judicially discoverable or manageable standards to adjudicate claims involving the conduct of a foreign military in responding to a riot is a pure, controlling question of law about which there are substantial grounds for difference of opinion.

As recently as 2007, when it decided *McMahon*, the Eleventh Circuit made no distinction between the actions of the American military and a foreign military when it stated that, in a "situation such as military combat or training,[ ] courts are incapable of developing judicially manageable standards."  502 F.3d at 1364 (footnote omitted).  It is an open question whether a federal court has a greater capacity to make legal pronouncements that are "principled, rational, and based upon reasoned distinctions" in the context of foreign military action than in the context of American military action.  *See Vieth v. Jubelirer*, 541 U.S. 267, 278 (2004).  If the Court has no adequate tools to evaluate the military activities of the United States, there is no

apparent reason it would suddenly acquire those tools when evaluating the military activities of

Bolivia.  Indeed, *McMahon* specifically noted that the cases finding political questions all

involved "combat activities," *McMahon*, 502 F.3d at 1363-64 n.32, and distinguished those cases

from the situation faced in *McMahon*, a simple claim for negligent operation of an airplane, *id.* at

1363-64.  There is therefore a serious legal question whether the military activities of a foreign

sovereign should be compared to the activities of a private company in evaluating whether

judicially manageable standards exist, as the Court did in its order, or those of the domestic

sovereign.

          This Court observed that there are judicially manageable standards for assessing

Alien Tort Statute claims generally.  *See* Op. 23-24.  Perhaps, but it does not follow that there are

manageable standards for evaluating ATS claims challenging the reasonableness of the Bolivian

government's military and policy actions during a hostage rescue or the suppression of a four-

week armed uprising throughout cities in Bolivia.  And there are a number of cases that show a

substantial disagreement with the Court's position.  *Cf. Carmichael v. Kellogg, Brown & Root*

*Servs., Inc.*, 572 F.3d 1271, 1288 (11th Cir. 2009) ("Given the circumstances under which the

[military] accident in this case took place, we are without any manageable standards for making

reasoned determinations regarding these fundamental elements of negligence claims."); *Aktepe v.*

*United States*, 105 F.3d 1400, 1404 (11th Cir. 1997) (holding that the plaintiffs' "effort to cast

their suit as a common negligence action . . . is unconvincing" because "[t]he court would still

have to decide how the [relevant military personnel] should have behaved"); *Schneider v.*

*Kissinger*, 310 F. Supp. 2d 251, 261-62 (D.D.C. 2004) (holding that, notwithstanding plaintiffs'

"claim that the standards for evaluating wrongful death are well-established," the circumstances

were such that "the common law on wrongful death" did not provide "judicially manageable standards") (internal quotations omitted), *aff'd*, 412 F.3d 190 (D.C. Cir. 2005).

Certification would provide the Eleventh Circuit with the opportunity to determine whether justiciable claims arise in cases that require adjudication of military or political action where plaintiffs allege extrajudicial killings and crimes against humanity.

**B.      The Act-of-State Doctrine**

There is also a substantial basis for a difference of opinion regarding the application of the factors that govern the applicability the act-of-state doctrine.  With regard to the first factor—the degree to which consensus has been reached regarding a particular area of international law, *Sabbatino*, 376 U.S. at 428—whether there is a high degree of consensus that claims can be made against government officials for official actions they took in the midst of an armed conflict is both highly debatable and hotly debated.[5]

The dueling reports submitted by international law experts to this Court illustrate the reasonable grounds for disagreement on the extent to which the alleged conduct violated recognized international law.  *Compare* D.E. 94 Ex. 43 (Posner Decl.) ¶ 24 ("There is no international consensus regarding the rules that ought to govern law enforcement operations to restore civil order."), *with* D.E. 89 Ex. F (Cleveland Decl.) ¶ 43 (contending that there is a consensus).  Case law is also divided on the question; as this Court noted, a series of Ninth Circuit cases hold that violations of so-called *jus cogens* norms are not protected by the act-of-state doctrine, *see, e.g.*, *Hilao v. Estate of Marcos (In re Estate of Marcos)*, 25 F.3d 1467, 1469–

---

[5] In framing this issue, the Court considered the claims at issue at a very high level of generality, holding that "extrajudicial killings and crimes against humanity [ ] are recognized as violations of international law."  Op. at 17–18.[5]  Whether that level of abstraction—discarding the context that these were acts by government officials in the midst of a riot situation—is proper in analyzing the claims at issue is itself open to reasonable debate.

72 (9th Cir. 1994), but cases from at least two other courts of appeals, and several district courts, support defendants' position that the conduct of foreign actors is protected from intrusion by American courts even if a plaintiff labels the conduct a violation of a *jus cogens* norm. *See Belhas v. Ya'alon*, 515 F.3d 1279, 1286–88 (D.C. Cir. 2008) (affirming immunity notwithstanding allegations of *jus cogens* violations given nature of official conduct at issue); *Wei Ye v. Jiang Zemin*, 383 F.3d 620, 626 (7th Cir. 2004) (same); *Matar v. Dichter*, 500 F. Supp. 2d 284, 292-93 (S.D.N.Y. 2007) (same), *aff'd*, 563 F.3d 9 (2d Cir. 2009); *Doe I v. Israel*, 400 F. Supp. 2d 86, 105 (D.D.C. 2005) (same). The Eleventh Circuit has not weighed in on this split of authority; this is precisely the type of open, substantial, and controlling legal question appropriate for Section 1292(b) certification.

As the Court recognized, the second factor—the potential significance of any implications that the issue may have on the foreign relations of the United States, *Sabbatino*, 376 U.S. at 428—is an even "closer call" than the first. Op. at 18. The Court concluded this factor did not tip the balance because the Executive did not intervene in the litigation. As discussed above, however, there is substantial room for disagreement whether the Executive's inability to take a position in this litigation because of the "complex and difficult" diplomatic situation with Bolivia counsels in favor of or against allowing this suit to proceed. Given the Executive's express direction that it could not even take a position given this complex relationship, there is a legitimate argument that this factor does indeed tip the balance against the litigation proceeding. And as to the third factor, whether the government that perpetrated the challenged act is still in power, *Sabbatino*, 376 U.S. at 428, while it is true that the challenged government is no longer in power, *Sabbatino* set out a balancing test rather than three prongs that must all be met. *See id*.

Open issues concerning the application of the act-of-state doctrine warrant Section 1292(b) certification, so as to eliminate any doubt as to whether the case can in fact proceed. *See Credit Suisse v. U.S. Dist. Court*, 130 F.3d 1342, 1348 (9th Cir. 1997) (granting writ of mandamus to compel district court to dismiss action on act-of-state grounds where district court refused to certify question for immediate appeal); *see also Tismo v. M/V Ippolytos*, 776 F. Supp. 928, 936 (D.N.J. 1991) (holding that, if order was not final, it was certified under § 1292(b) for appellate court to determine applicability of act-of-state doctrine), *aff'd mem.*, 947 F.2d 937 (3d Cir. 1991); *Rasoulzadeh v. Associated Press*, 574 F. Supp. 854, 861 (S.D.N.Y. 1983) (informing parties that court would be prepared to certify order denying motion to dismiss on act-of-state grounds under Section 1292(b)), *aff'd mem.*, 767 F.2d 908 (2d Cir. 1985); *Beaty*, 2007 WL 1169333, at *1 (defendant took appeal as of right on immunity issue and also filed a 1292(b) request to appeal additional issues; district court granted 1292(b) request and Supreme Court ultimately reversed after finding defendant immune from suit).

## C. The Alien Tort Statute Claims.

The final question concerns plaintiffs' attempt to invoke federal jurisdiction under the Alien Tort Statute, 28 U.S.C. § 1350. As this Court recognized, the Supreme Court has stressed that the ATS's "independent judicial recognition of actionable international norms . . . [is] subject to vigilant doorkeeping" and requires "judicial caution." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 725–29 (2004); *see* Op. at 22. That caution is appropriate here, and counsels in favor of Section 1292(b) certification.

Plaintiffs' claims for extrajudicial killings and crimes against humanity fail because there is no well-recognized international norm governing the disproportionate use of force. Plaintiffs plead that their ATS claims arose against the backdrop of an armed uprising, and they suggest that their claims allege the disproportionate use of force in response. *See* D.E.

89 Ex. F, at ¶ 52 (characterizing the conduct at issue as including "the use of unnecessary or disproportionate force").  There are simply no international norms, however, concerning whether government forces responded to civil unrest with "too much" or "too broadly directed" force; indeed, a number of cases have held that no well-recognized international norm is applicable in this context.  *See Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 122 (2d Cir. 2008) (an alleged norm of disproportionality was "simply too indefinite to satisfy *Sosa*'s specificity requirement" and, even if it did, it would contain a stringent intent requirement), *cert. denied*, 129 S. Ct. 1524 (2009); *Corrie*, 403 F. Supp. 2d at 1025 (plaintiffs' allegation that "destruction of personal property is prohibited except where such destruction is rendered absolutely necessary by military operations . . . does not set a clear, specific norm") (internal quotations omitted); *see also* D.E. 94 Ex. 43 (Posner Decl.) (none of the acts alleged in the Complaint state a violation of customary international law).

Whether any applicable international norm exists is therefore at a minimum debatable; that issue is complex and unresolved by Eleventh Circuit.  And it is of such great import that a bipartisan group of four former Legal Advisers to the Department of State filed an amicus brief before this Court urging dismissal of the ATS claims, cautioning that "[t]he insertion of a United States court into the purely internal affairs of another sovereign nation may, and likely would, inflame international tensions, hamper the ability of the Executive Branch to speak with one voice, and indeed, potentially embarrass the Executive Branch."  D.E. 62, at 7-8.  Before the Court embarks on a course that may lead to these results, "judicial caution" advises that the court of appeals should be allowed to consider whether the ATS in fact allows this type of claim.

### III.    AN IMMEDIATE APPEAL WILL MATERIALLY ADVANCE THIS LITIGATION.

There can be no serious doubt that resolution of the questions presented here will "materially advance the ultimate termination of the litigation," because such resolution "would serve to avoid a trial or otherwise substantially shorten the litigation."  *McFarlin*, 381 F.3d. at 1259 (quotations omitted).  Section 1292(b) was enacted to address precisely the situation presented here:  *i.e.*, in which an immediate appeal may result in the termination of claims that would otherwise result in complicated discovery and a lengthy trial.  Reversal of the Court's Order with respect to the political question and act-of-state doctrines will end the litigation in its entirety.  And, even if the state-law claims remain if the ATS claims are dismissed, *but see* 28 U.S.C. § 1367(c), the dismissal of those claims would significantly decrease the amount of discovery and the length and complexity of the trial.

Because of the procedural posture of this case, moreover, an affirmance by the Eleventh Circuit would not materially impact the advancement of this litigation.  As noted above, defendants have filed a notice of appeal (and a motion to stay) concurrently with this motion for Section 1292(b) certification.  The notice of appeal is plainly effective at least as to defendants' immunity defenses, and, under Eleventh Circuit precedent, should result in a stay of all proceedings in this Court.  *See Blinco v. Green Tree Servicing, LLC*, 366 F.3d 1249, 1252 (11th Cir. 2004) (per curiam).  It would materially advance the outcome of this litigation if the Eleventh Circuit has the opportunity to review this Court's political question, act-of-state, and ATS rulings at the same time that its reviews this Court's immunity rulings; indeed, the Eleventh Circuit may well do so anyway under the doctrine of pendent or direct jurisdiction even if the motion for Section 1292(b) certification is denied.

15

Plenary interlocutory review of this Court's denial of defendants' motion to dismiss could prevent years of burdensome discovery and litigation.  Undoubtedly, the parties would require extensive discovery from witnesses and documents currently located in Bolivia—indeed, prosecutors in Bolivia have publicly claimed that they have over 3,000 witnesses and 4,900 exhibits relating to these events.  Under the best of circumstances, transnational discovery is expensive, burdensome, and time-consuming.  *See, e.g.*, *Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*, 361 F.3d 11, 21 & n.4 (1st Cir. 2004); *In re Arakis Energy Corp. Sec. Litig.*, No. 95 CV 3431, 2001 WL 1590512, at *11 (E.D.N.Y. Oct. 31, 2001).  This case does not present the best of circumstances.  To the contrary, not only does this case involve events that occurred during a period of intense civil unrest, but civil unrest—and anti-American sentiments—exist to this day; counsel would have to travel to locations throughout Bolivia to conduct fact development and discovery regarding extremely sensitive events in the midst of this tense situation.

Discovery would necessarily involve assessing the factual circumstances concerning the alleged deaths of sixty-seven individuals and the alleged injuries sustained by more than four hundred others.  Potential witnesses would include not only the civilians involved, but also cabinet members and members of the military and the police involved in negotiating with hostage-takers, freeing hostages, and defending the constitutional government of Bolivia.  Discovery would also involve assessing the factual circumstances concerning the taking of over eight hundred hostages in Sorata and the blockade of La Paz in an attempt to unseat the Lozada government.  Defendants also would seek discovery to support their contention that the uprisings were led by, *inter alia*, Evo Morales, the current Bolivian

president—a contention supported by contemporaneous State Department cables.  To say the least, the taking of discovery of this variety will be far from straight-forward.

Even discovery in the United States would be complicated.  Defendants, for example, would seek to depose State Department officials present in Bolivia at the relevant times, who monitored events and prepared crucial cables supporting defendants' position.  Those officials would include Ambassador David N. Greenlee, who repeatedly stated his opinion that the Lozada government's response during the relevant time period was appropriate under the circumstances and noted that the United States permitted its planes to be used by the Lozada government to help defend itself.  *See* D.E. 81 Exs. 3, 10.  Discovery from numerous embassy and State Department officials could require State Department evaluation and authorization.  *See* 22 C.F.R. § 172.4 (2009).  This case could also require requests to other federal agencies for classified materials, *e.g.*, to the State Department (which redacted certain of its cables before producing them under the Freedom of Information Act), the Central Intelligence Agency, and the Drug Enforcement Agency, raising complex questions about defendants' entitlement to such documents and to depositions of these agencies' personnel.

This Court should not undertake the laborious process of supervising and adjudicating such exceptionally complex discovery in a case in which the resolution of crucial threshold questions by the Eleventh Circuit could quickly and easily resolve the entire dispute, particularly when the Eleventh Circuit will already be considering this case on interlocutory appeal.  Under these circumstances, the third prong of the test for Section 1292(b) certification is soundly met.

## IV.    A STAY PENDING APPEAL IS WARRANTED.

As noted, defendants are simultaneously filing an appeal as of right from the denial of their immunity claims, and requesting an accompanying stay of all proceedings.  The right to this stay is near automatic and clearly supported by circuit precedent.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Blinco*, 366 F.3d at 1252.  Out of an abundance of caution, however, defendants respectfully request that the Court stay all proceedings pending its consideration of the instant motion for certification and, if certification is granted, pending defendants' interlocutory appeal.  "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  Courts routinely grant stays accompanying a Section 1292(b) certification. *See, e.g.*, *Dial v. Healthspring of Ala., Inc.*, 612 F. Supp. 2d 1205, 1209 (S.D. Ala. 2007), *rev'd*, 541 F.3d 1044 (11th Cir. 2008); *Benedict v. Town of Newburgh*, 95 F. Supp. 2d 136, 144 (S.D.N.Y. 2000); *Shochet Sec., Inc. v. First Union Corp.*, 663 F. Supp. 1035, 1038 (S.D. Fla. 1987).


## <u>CONCLUSION</u>

For the reasons stated above, this Court should grant this motion for Section 1292(b) certification of the issues discussed above, and issue an accompanying stay.

Respectfully submitted,

By:     /s/ Eliot Pedrosa

| | |
|---|---|
| Alan M. Dershowitz (*pro hac vice*) | Kevin M. Downey (*pro hac vice*) |
| Jack Landman Goldsmith III (*pro hac vice*) | Ana C. Reyes (*pro hac vice*) |
| 1563 Massachusetts Avenue | WILLIAMS & CONNOLLY LLP |
| Cambridge, MA  02138 | 725 Twelfth Street, N.W. |
| (617) 495-4617 (Dershowitz) | Washington, D.C.  20005 |
| (617) 495-7855 (facsimile) | (202) 434-5000 |
| (617) 495-9170 (Goldsmith) | (202) 434-5029 (facsimile) |
| (617) 496-4863 (facsimile) |     kdowney@wc.com |
|     dersh@law.harvard.edu |     areyes@wc.com |
|     jgoldsmith@law.harvard.edu | |

Mark P. Schnapp, Esq. (Fl. Bar No. 501689)
Eliot Pedrosa, Esq. (Fl. Bar No. 182443)
GREENBERG TRAURIG, P.A.
1221 Brickell Avenue
Miami, FL  33131
(305) 579-0743
(305) 579-0717 (facsimile)
    schnappm@gtlaw.com
    pedrosae@gtlaw.com

Dated:  December 9, 2009

*Counsel for Defendants Sánchez de Lozada
and Sánchez Berzaín*

**CERTIFICATE OF GOOD FAITH CONFERENCE**

I HEREBY CERTIFY that counsel for the movant has conferred with all parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues but has been unable to do so.

/s/ Eliot Pedrosa

Eliot Pedrosa

20

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 9, 2009, I electronically filed the foregoing Motion for Certification for Interlocutory Appeal Under 28 U.S.C. § 1292(b) this Court's Order of November 25, 2009 with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served on Ira J. Kurzban, a member of the bar of this Court, on this day via transmission of Notices of Electronic Filing generated by CM/ECF and on the other counsel listed on the attached Service List by electronic mail (in pdf format).

/s/ Eliot Pedrosa
Eliot Pedrosa

## SERVICE LIST

Ira J. Kurzban
Geoffrey Hoffman
KURZBAN, KURZBAN, WEINGER &
TETZELI, P.A.
Plaza 2650
2650 SW 27th Avenue, 2nd Floor
Miami, FL 33133
(305) 433-4675
ira@kkwtlaw.com
ghoffman@kkwtlaw.com

Tobias E. Zimmerman
Steven H. Schulman
AKIN GUMP STRAUSS HAUER & FELD
LLP
1333 New Hampshire Ave, NW
Washington, DC 20036
(202) 887-4410
tzimmerman@akingump.com
sschulman@akingump.com

Paul Hoffman
SCHONBRUN, DE SIMONE, SEPLOW,
HARRIS & HOFFMAN, LLP
723 Ocean Front Walk
Venice, CA 90201
(310) 396-0731
hoffpaul@aol.com

Beth Stephens
Rutgers School of Law
217 North Fifth Street
Camden, NJ 08102
beth.stephens@rutgers.edu

David Rudovsky
KAIRYS, RUDOVSKY, MESSING &
FEINBERG LLP
718 Arch St, Suite 501 South
Philadelphia, PA 19016
(215) 925-4400
drudovsk@law.upenn.edu

James L. Cavallaro
Tyler R. Giannini
INTERNATIONAL HUMAN RIGHTS
CLINIC, Human Rights Program
Harvard Law School
Pound Hall 401, 1563 Massachusetts Ave
Cambridge, MA 02138
(617) 495-9362
jcavalla@law.harvard.edu
giannini@law.harvard.edu

Judith Brown Chomsky
CENTER FOR CONSTITUTIONAL
RIGHTS
Post Office Box 29726
Elkins Park, PA 19027
(215) 782-8367
jchomsky@igc.org

Jennifer Green
CENTER FOR CONSTITUTIONAL
RIGHTS
666 Broadway, Seventh Floor
New York, NY 10012
jgreen@ccr-ny.org

Michael C. Small
Jeremy F. Bollinger
AKIN GUMP STRAUSS HAUER & FELD
LLP
2029 Century Park East, Suite 2400
Los Angeles, CA 90067
(310) 229-1000
msmall@akingump.com
jbollinger@akingump.com