UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | |
|---|---|
| ELOY ROJAS MAMANI, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 08-21063-CV-COHN |
| | ) |
| GONZALO DANIEL SÁNCHEZ DE | ) |
| LOZADA SÁNCHEZ BUSTAMANTE, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |
| | ) |
| ELOY ROJAS MAMANI, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Case No. 07-22459-CV-COHN |
| v. | ) |
| | ) |
| JOSÉ CARLOS SÁNCHEZ BERZAÍN, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

**PLAINTIFFS' MOTION *IN LIMINE* TO EXCLUDE REFERENCE
TO AKIN GUMP'S REPRESENTATION OF THE GOVERNMENT OF BOLIVIA**

Plaintiffs move *in limine* to exclude any testimony or reference to the representation of the Government of Bolivia in connection with its capitalization of energy resources from 1995-1997 by Akin Gump Strauss Hauer & Feld LLP ("Akin Gump"), currently *pro bono* counsel to Plaintiffs. Plaintiffs likewise move to exclude testimony or reference to all preliminary communications or bids in 2002 or 2003 between Akin Gump and representatives of the Government of Bolivia. During discovery, Defendants doggedly pursued evidence of Akin Gump's long-past engagement, including by serving a subpoena on the law firm itself, arguing that the fact that a reputable firm like Akin Gump represented the Government of Bolivia in the

mid-1990s in connection with the capitalization project was proof that Defendants intended years later to implement their plan to export natural gas in a rational and lawful manner. Defendants have also suggested that a 2002 or 2003 bid by an Akin Gump subsidiary to lobby the U.S. Government on behalf of the Government of Bolivia is somehow relevant to the events at issue in this case. Akin Gump's prior representation and bid for further representation of the Government of Bolivia—not these individual Defendants—on matters wholly unrelated to the issues in this litigation is both irrelevant and potentially confusing to the jury, and should be excluded pursuant to Federal Rules of Evidence 401 and 403.

## BACKGROUND

The issue of Akin Gump's prior representation of the Government of Bolivia was first raised at the June 28, 2017 deposition of former Minister of Hydrocarbons Jorge Berindoague Alcocer. Akin Gump's prior representation was never the subject of discovery and no documents about it had been produced by any of the parties. Instead, Defendants raised the issue for the first time at Mr. Berindoague's deposition by presenting him with a 278-page document that was entirely in Spanish, with no accompanying English translation. *See* Ex. A (Berindoague Dep. Tr. 197:16-198:23) (June 28, 2017); Ex. D (Berindoague Dep. Ex. 10) (June 28, 2017).[1] This document included a 29-page "Consultancy Agreement" between Akin Gump and the "Ministry without Portfolio Responsible for Capitalization of Bolivia," dated December 18, 1995. *See* Ex. E (Berindoague Dep. Ex. 11) (Dec. 18, 2017) (English translation). The Consultancy Agreement called for Akin Gump to provide the "Legal consultancy required during the entire Bolivian Fiscal Oilfield (Y.P.F.B.) capitalization process" and listed other objectives and the scope of the

---

[1] Exhibits cited herein are attached to the Declaration of Steven H. Schulman in Support of Plaintiffs' Motion *in Limine* to Exclude Reference to Akin Gump's Representation of the Government of Bolivia.

legal service. *Id.* at 1, 20-24. Mr. Berindoague testified that the "government of Bolivia rel[ied] on the legal advice of Akin Gump in executing capitalization of YPFB." Ex. A (Berindoague Dep. Tr. 201:22-25) (June 28, 2017). After objection by Plaintiffs due to Defendants' failure to provide an English-language version of the exhibit, Defendants eventually agreed to hold the deposition open and allow further questioning on the exhibit. *See* Stipulation ¶ 3, Dkt. 291.[2]

On December 18, 2017, Plaintiffs resumed the deposition of Mr. Berindoague, with a version of the Consultancy Agreement now translated into English. *See* Ex. B (Berindoague Dep. Tr. 222:3-23) (Dec. 18, 2017). Mr. Berindoague testified that the representation by Akin Gump of the Government of Bolivia had terminated in 1997, at the end of President Sánchez de Lozada's first term. *See id*. at 223:20-224:3. He confirmed that neither Sánchez de Lozada nor Sánchez Berzaín played any role in the hiring of Akin Gump. *See id.* at 225:10-22. He also confirmed that Akin Gump's representation terminated well before the development of the pipeline to transport natural gas. *See id.* at 227:4-9. Mr. Berindoague acknowledged that Akin Gump's representation had nothing to do with military strategy, endorsement of government policies, responses to protests, or the political wisdom of the sale of natural gas. *See id.* at 227:10-228:24. Finally, Mr. Berindoague agreed that "Akin Gump's representation was totally irrelevant to the events of September 8 and October 2003." *Id.* at 229:1-6.

Prior to Mr. Berindoague's second deposition, on July 20, 2017, Akin Gump deposed Jaime Aparicio, the former Bolivian Ambassador to the United States. Mr. Aparicio testified that in late 2002 or early 2003, "a subsidiary of Akin Gump" submitted a bid to lobby the U.S. Government on behalf of the Government of Bolivia for the purposes of "branding the country . . . [the] free trade act from the United States… and to help Bolivia in their energy projects." Ex. C

---

[2] All docket number references contained herein refer to *Mamani, et al. v. Sánchez de Lozada*, Case No. 08-21063.

3

(Aparicio Dep. Tr. at 147:22-148:25).  Mr. Aparicio admitted that "neither Akin Gump nor [its affiliate] was approached to give advice with respect to mobilizing the police or military to deal with protests" and no military information or policies were shared with Akin Gump.  *Id.* at 153:5-22.  According to Mr. Aparicio, Akin Gump was not hired because the crisis was already "so deep."  *Id.* at 148:20-148:25.  Mr. Aparicio further testified that to his knowledge, communications between Akin Gump's subsidiary and representatives of the Government of Bolivia ended in March 2003 and he does not know of any communications between Defendants and anyone from Akin Gump.  *See id.* 157:9-158:3.

## ARGUMENT

Under Rule 401, evidence is admissible only if it "it has any tendency to make a fact more or less probable than it would be without the evidence, and is of consequence in determining the action."  Fed. R. Evid. 401.  Under Rule 403, even admissible evidence should be excluded "if its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, [or] misleading the jury."  Fed. R. Evid. 403.  Both Rules require the exclusion of evidence of Akin Gump's prior representation and/or attempted representation of the Government of Bolivia.

The Consultancy Agreement and the related testimony concerning Akin Gump's representation of the Government of Bolivia from 1995-1997 and 2002 discussions about a possible representation have no relevance whatsoever to the issues in this litigation.  As the Court held in its Order of July 25, 2017, this case involves the "the events of September and October 2003 and the identity of those who bear responsibility for those events."  Order Affirming Magistrate Judge's Order at 3, Dkt. 266 ("July 25, 2017 Order").  Mr. Berindoague acknowledged that Akin Gump's mid-1990s representation of the Bolivian government is

4

irrelevant to the events at issue in 2003.  *See* Ex. B (Berindoague Dep. Tr. 228:16-229:12) (Dec. 18, 2017).

Moreover, Akin Gump's representation certainly cannot be relevant to offer any imprimatur or other endorsement of the policies enacted by Defendants, in particular those that led to the violent actions by the military under Defendants' command.  *See* Fla. R. Prof'l Conduct 4-1.2(b) ("A lawyer's representation of a client, including representation by appointment, does not constitute an endorsement of the client's political, economic, social, or moral views or activities.").  This logic applies with even more force where the lawyer or firm conducted only preliminary communications with the client.

The fact that Akin Gump represented the Government of Bolivia from 1995-1997, six to eight years *prior to the events at issue*, is of no consequence in determining the facts in this action.  *See* Fed. R. Evid. 401; *cf. Jackson v. Waffle House, Inc.*, 413 F. Supp. 2d 1338, 1345 (N.D. Ga. 2006) (striking depositions and declarations from the record where such documents were not "probative or relevant to the plaintiffs' claims" because the documents related to events that occurred well before the events at issue in the case).  Akin Gump's 2002 bid to represent the Government of Bolivia is similarly irrelevant to "the events of September and October 2003 and the identity of those who bear responsibility for those events."  July 25, 2017 Order at 3.

To the extent Defendants argue that a prominent law firm's involvement in the capitalization plan shows some sort of lawful intent behind the plans to export natural gas, that argument makes no sense.  The capitalization of Bolivia's national oil company, which was completed during the 1990s, has nothing to do with the Bolivian government's attempt to export natural gas in the 2000s.  *See* Ex. A (Berindoague Dep. Tr. 31:13-32:9) (June 28, 2017) (explaining capitalization as a form of privatization where 50 percent of the company is held by

5

the Bolivian people and 50 percent is held by private investors); *see also* Ex. B (Berindoague Dep. Tr. 236:4-12) (Dec. 18, 2017) (noting it was "necessary to have legal advice" for the capitalization project even if "it was not necessarily Akin Gump"). This case is not about whether the implementation of the gas export project in the 2000s was lawful, wise or conducted in consultation with the best legal, engineering, or any other professional services. It is about how the Defendants violently dealt with protests that related, in part, to a decision to export gas.

As Defendants' witnesses acknowledged, the Government of Bolivia did not consult with Akin Gump about responding to protests, mobilizing security forces, or military strategy. *See* Ex. C (Aparicio Dep. Tr. 153:5-22); Ex. B (Berindoague Dep. Tr. 227:10-228:24) (Dec. 18, 2017). Indeed, as Mr. Berindoague testified, Akin Gump's representation of the Government of Bolivia had nothing to do with the endorsement of government policies and "Akin Gump's representation was totally irrelevant to the events of September and October 2003." Ex. B (Berindoague Dep. Tr. at 227:10-228:24, 229:1-6) (Dec. 18, 2017). Accordingly, Rule 401 requires the exclusion of the Consultancy Agreement and all evidence regarding Akin Gump's decades-old representation of the Government of Bolivia, as well as Akin Gump's 2002 bid.

Even if Defendants somehow could prove these unrelated communications are relevant to the killings of Plaintiffs' family members, any evidence that Akin Gump represented or sought to represent the Government of Bolivia would likely mislead the jury or prejudice Plaintiffs. *See* Fed. R. Evid. 403; *see also Guthrie v. Ball,* 2014 WL 5089849 (E.D. Tenn. Oct. 9, 2014) (in products liability trial, precluding defendant from referencing "the other cases in which Plaintiff's counsel represented clients other than Plaintiff in lawsuits against manufacturers of fentanyl patches"). The evidence could confuse the jury as to the affiliation of Plaintiffs' counsel, or the firm's loyalty to its current clients. Instead, the trial ought to focus on "the events

6

of September and October 2003 and the identity of those who bear responsibility for those events." July 25, 2017 Order at 3. As noted above, to the extent Defendants seek to use Akin Gump's representation or bid for representation as some kind of imprimatur for Defendants' actions, allowing this evidence would run contrary to the rules of ethics, and would prejudice Plaintiffs. Accordingly, even if relevant, any evidence of Akin Gump's prior representation of the Government of Bolivia should be excluded under Rule 403.

**LOCAL RULE 7.1(a)(3) CERTIFICATION**

Pursuant to Local Rule 7.1(a)(3), Plaintiffs' counsel has conferred with counsel for Defendants in a good faith effort to resolve the issues raised in this motion and has been unable to do so. Defendants' counsel has indicated that they will oppose the motion.

Dated: January 5, 2018  
       Miami, Florida

Respectfully submitted,

By:    */s/ Ilana Tabacinic*  
Ilana Tabacinic (Florida Bar No. 57597)  
AKERMAN LLP  
Three Brickell City Centre  
98 Southeast Seventh Street, Suite 1100  
Miami, FL 33131  
Tel: (305) 374-5600  
Fax: (305) 374-5095  
Email: ilana.tabacinic@akerman.com

*Counsel for Plaintiffs*

*Counsel for Plaintiffs*

| | |
|---|---|
| Ilana Tabacinic (Florida Bar No. 57597)<br>AKERMAN LLP<br>Three Brickell City Centre<br>98 Southeast Seventh Street, Suite 1100<br>Miami, FL 33131<br>Tel: (305) 374-5600<br>Fax: (305) 374-5095<br>Email: ilana.tabacinic@akerman.com | Steven H. Schulman (*pro hac vice*)<br>AKIN GUMP STRAUSS HAUER & FELD LLP<br>Robert S. Strauss Building<br>1333 New Hampshire Avenue NW<br>Washington, DC 20036<br>Tel: (202) 887-4000<br>Fax: (202) 887-4288<br>E-mail: sschulman@akingump.com |
| Judith Brown Chomsky (*pro hac vice*)<br>CENTER FOR CONSTITUTIONAL RIGHTS<br>Post Office Box 29726<br>Elkins Park, PA 19027<br>Tel: (215) 782-8367<br>Fax: (215) 782-8368<br>E-mail: judithchomsky@icloud.com | Joseph L. Sorkin (*pro hac vice*)<br>Jennifer L. Woodson (*pro hac vice*)<br>Saurabh Sharad (*pro hac vice*)<br>Christine Doniak (*pro hac vice*)<br>Harley Raff (*pro hac vice*)<br>AKIN GUMP STRAUSS HAUER & FELD LLP<br>One Bryant Park<br>Bank of America Tower<br>New York, NY 10036-6745<br>Tel: (212) 872-1000<br>Fax: (212) 872-1002<br>E-mail: jsorkin@akingump.com<br>E-mail: jwoodson@akingump.com<br>E-mail: ssharad@akingump.com<br>E-mail: cdoniak@akingump.com<br>E-mail: hraff@akingump.com |
| Beth Stephens (*pro hac vice*)<br>CENTER FOR CONSTITUTIONAL RIGHTS<br>666 Broadway<br>Seventh Floor<br>New York, NY 10012<br>Tel: (212) 614-6431<br>Fax: (212) 614-6499<br>E-mail: beth.stephens@rutgers.edu | Zak Franklin (*pro hac vice*)<br>Erica Abshez Moran (*pro hac vice*)<br>AKIN GUMP STRAUSS HAUER & FELD LLP<br>1999 Avenue of the Stars, Suite 600<br>Los Angeles, CA 90067<br>Tel: (310) 229-1000<br>Fax: (310) 229-1001<br>E-mail: zfranklin@akingump.com<br>E-mail: emoran@akingump.com |
| David Rudovsky (*pro hac vice*)<br>KAIRYS, RUDOVSKY, MESSING & FEINBERG LLP<br>718 Arch Street, Suite 501 South<br>Philadelphia, PA 19016<br>Tel: (215) 925-4400<br>Fax: (215) 925-5365<br>E-mail: drudovsk@law.upenn.edu | Rubén H. Muñoz (*pro hac vice*)<br>Jason Weil (*pro hac vice*)<br>AKIN GUMP STRAUSS HAUER & FELD LLP<br>Two Commerce Square<br>2001 Market Street, Suite 4100<br>Philadelphia, PA 19103<br>Tel: (212) 965-1328<br>Fax: (215) 965-1210<br>E-mail: rmunoz@akingump.com<br>E-mail: jweil@akingump.com |

| | |
|---|---|
| Paul Hoffman (*pro hac vice*)<br>SCHONBRUN, SEPLOW,<br>HARRIS & HOFFMAN, LLP<br>723 Ocean Front Walk<br>Venice, CA 90201<br>Tel: (310) 396-0731<br>Fax: (310) 399-7040<br>E-mail: hoffpaul@aol.com | Tyler R. Giannini (*pro hac vice*)<br>Susan H. Farbstein (*pro hac vice*)<br>Thomas Becker (*pro hac vice*)<br>INTERNATIONAL HUMAN RIGHTS CLINIC,<br>Human Rights Program<br>Harvard Law School<br>Pound Hall 401, 1563 Massachusetts Avenue<br>Cambridge, MA 02138<br>Tel: (617) 495-9362<br>Fax: (617) 495-9393<br>E-mail: giannini@law.harvard.edu<br>E-mail: sfarbstein@law.harvard.edu<br>E-mail: thomasbainbecker@gmail.com |

## CERTIFICATE OF SERVICE

      I hereby certify that on January 5, 2018, I electronically filed the foregoing Motion and accompanying documents with the Clerk of the Court using CM/ECF.  I also certify that the foregoing documents are being served this day on counsel of record in the attached Service List either via transmission of Notice of Electronic Filing generated by CM/ECF or via e-mail.

                                    */s/ Ilana Tabacinic*
                                      Ilana Tabacinic

## **SERVICE LIST**

Ana C. Reyes
Stephen D. Raber
James E. Gillenwater
Suzanne M. Salgado
Giselle Barcia
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC  20005
(202) 434-5000
(202) 434-5029 (facsimile)
areyes@wc.com
sraber@wc.com
jgillenwater@wc.com
ssalgado@wc.com
gbarcia@wc.com

Evan B. Berger
BECKER & POLIAKOFF, P.A.
1 East Broward Blvd., Suite 1800
Ft. Lauderdale, FL  33301
(954) 364-6055
(954) 985-4176 (facsimile)
eberger@bplegal.com