**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

| | | |
|---|---|---|
| ELOY ROJAS MAMANI, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **Case No. 08-21063-CV-COHN** |
| | ) | |
| GONZALO DANIEL SÁNCHEZ DE | ) | |
| LOZADA SÁNCHEZ BUSTAMANTE, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |
| ELOY ROJAS MAMANI, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **Case No. 07-22459-CV-COHN** |
| v. | ) | |
| | ) | |
| JOSÉ CARLOS SÁNCHEZ BERZAÍN, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE**
**TESTIMONY FROM AND ALL REFERENCES TO THE TRIAL OF**
**RESPONSIBILITIES IN BOLIVIA**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

ARGUMENT ........................................................................................................................2

I.    Excerpts from Testimony Given at the Trial of Responsibilities Are Not Inherently Unreliable or Unduly Prejudicial .................................................................................3

II.   Excerpts of Testimony from the Trial of Responsibilities Are Admissible under the Former Testimony Exception to the Hearsay Rule.................................................6

   A.  The Governing Standard Under Rule 804(b)(1)(B) is "Similarity of Motive" ....................7

   B.  The Trial Excerpts Are Admissible as Former Testimony Because the Defendants at the Trial of Responsibilities Had an Opportunity to Develop that Evidence and a Motive Similar to that of Defendants in This Action ..................................9

      1.  Testimony as to the absence of a guerrilla force in Bolivia...........................12

      2.  Testimony about an order to withdraw the police and place the military in charge of security in El Alto as of October 12.................................12

      3.  Testimony that Defendant Sánchez de Lozada said that, as President and Captain General of the Armed Forces, he was responsible for what was happening .................12

      4.  Testimony that Defendant Sánchez de Lozada was informed that the use of the Armed Forces would lead to more deaths and learned of deaths in El Alto at around 4 pm on October 12......................................................13

      5.  Testimony that the Republic Plan was implemented between September 10 and 12, 2003; that Defendant Sánchez Berzaín, on behalf of Defendant Sánchez de Lozada ordered the military to transport people from Sorata; and that Sánchez Berzaín, over General Veliz's objections, insisted on traveling to Sorata on a military helicopter......14

III.  The Trial Testimony Excerpts Are Admissible Under Federal Rule of Evidence 807, the Residual Exception .................................................................................................15

   A.  The Trial Testimony Excerpts, as a Whole, Demonstrate "Equivalent Circumstantial Guarantees of Trustworthiness" .........................................................15

   B.  Each of the Trial Testimony Excerpts Meets the Remaining Requirements of Rule 807...16

      1.  Testimony as to the absence of a guerrilla force in Bolivia...........................16

      2.  Testimony about the order to withdraw the police and place the military in charge of security in El Alto as of October 12.................................17

3.   Testimony that Defendant Sánchez de Lozada said that, as President and Captain General of the Armed Forces, he was responsible for what was happening ..................17

4.   Testimony that Defendant Sánchez de Lozada was informed that the use of the Armed Forces would lead to more deaths...................................................................18

5.   Testimony about implementation of the Republic Plan and about Defendant Sánchez Berzaín's actions on September 20...............................................................19

IV.   Rule 403 Does Not Require Exclusion of All References to the Trial of Responsibilities ..19

CONCLUSION....................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*782 F. Fleet, Inc. v. Dreyfus Supply & Mach. Corp.*,
   782 F.2d 1455 (8th Cir. 1986) ......................................................................7

*Athridge v. Aetna Cas. & Sur. Co.*,
   474 F. Supp. 2d 102 (D.D.C. 2007) ...........................................................7, 8

*California v. Green*,
   399 U.S. 149 (1970) ....................................................................................16

*Chambers v. Mississippi*,
   410 U.S. 284, 298 (1973) .......................................................................15, 16

*Clay v. Johns-Manville Sales Corp.*,
   722 F.2d 1289 (6th Cir. 1983) ......................................................................8

*Edwards v. Techtronic Indus. N. Am., Inc.*,
   2015 WL 3616558 (D. Or. June 9, 2015) ......................................................8

*Hearn v. McKay*,
   603 F.3d 897 (11th Cir. 2010) ......................................................................7

*Horne v. Owens-Corning Fiberglas Corp.*,
   4 F.3d 276 (4th Cir. 1993) ............................................................................7

*KMS Rest. Corp. v. Wendy's Int'l, Inc.*,
   194 F. App'x 591 (11th Cir. 2006) .............................................................16

*Lloyd v. Am. Exp. Lines, Inc.*,
   580 F.2d 1179 (3d Cir. 1978) ........................................................................8

*Lohrmann v. Pittsburgh Corning Corp.*,
   782 F.2d 1156 (4th Cir. 1986) ......................................................................9

*Mancusi v. Stubbs*,
   408 U.S. 204 (1972) ......................................................................................7

*O'Banion v. Owens-Corning Fiberglas Corp.*,
   968 F.2d 1011 (10th Cir. 1992) ....................................................................7

*Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*,
   71 F.3d 119 (4th Cir. 1995) ..........................................................................8

*United States v. Alfaro-Moncada*,
   607 F.3d 720 (11th Cir. 2010) ....................................................................20

*United States v. Deeb*,
    13 F.3d 1532 (11th Cir. 1994) .......................................................................15

*United States v. DiNapoli*,
    8 F.3d 909 (2d Cir. 1993) ...........................................................................8, 9

*United States v. Drogoul*,
    1 F.3d 1546 (11th Cir. 1993) .........................................................................7

*United States v. Feldman*,
    761 F.2d 380 (7th Cir. 1985) .........................................................................9

*United States v. King*,
    713 F.2d 627 (11th Cir. 1983) ..................................................................19, 20

*United States v. Miles*,
    290 F.3d 1341 (11th Cir. 2002) .................................................................9, 10

*United States v. Salerno*,
    505 U.S. 317 (1992).............................................................................9, 10, 14

*Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*,
    505 F. Supp. 1190 (E.D. Pa. 1980), *aff'd in part and rev'd in part on other
    grounds*, 723 F.2d 238 (3d Cir. 1983) .........................................................9

**Statutes and Other Authorities**

5 Joseph M. McLaughlin, *Weinstein's Federal Evidence* § 804 (2d ed. 2011) ..............................7

Federal Rule of Civil Procedure 44.1 ..........................................................................1

Federal Rule of Evidence 403 ...................................................................................19

Federal Rule of Evidence 804.................................................................................6, 7

Federal Rule of Evidence 807..................................................................................15

2 George E. Dix et al., *McCormick on Evidence* § 304 (7th ed. 2016) ..........................9

Human Rights Comm. Dec., No. 2491/2014, U.N. Doc. CCPR/C/120/D/2491/
    2014 (Aug. 21, 2017)..........................................................................................2

Rome Statute of the Int'l Crim. Ct. art. 33, 2187 U.N.T.S. 90 (July 17, 1998,
    entered into force July 1, 2002) ......................................................................11

Southern District of Florida Local Rule 7.1(a)(3) ..........................................................1

## INTRODUCTION

Defendants move to exclude excerpts of testimony from witnesses who testified at a criminal trial in Bolivia that addressed the same factual events at issue in this litigation, the 2009 Trial of Responsibilities in Sucre, Bolivia (the "Trial of Responsibilities," or simply, the "Trial"). Plaintiffs submitted six such excerpts in support of their Opposition to Defendants' Motion for Summary Judgment and plan to rely on similar excerpts at trial in this case. As explained below, this evidence is admissible under the Federal Rules of Evidence, and Defendants' motion to exclude it should be denied.

Defendants also move to exclude evidence that Plaintiffs do not intend to offer, including evidence of the criminal charges faced by the defendants at the Trial of Responsibilities, the fact that Defendants were charged and declared in default, the convictions of the Trial defendants, and the factual findings contained in the final judgment.[1] Given that Plaintiffs do not plan to rely on evidence as to any of these issues,[2] the rest of Defendants' motion should be denied as moot.

The evidence at issue in this motion consists of excerpts from Trial testimony that addressed facts within the personal knowledge of the witnesses. *See* Exs. 8-13.[3] Each excerpt is

---

[1] Had Defendants made the "reasonable effort" to confer with Plaintiffs about this motion required by Local Rule 7.1(a)(3), they would have learned that much of their motion is irrelevant. Instead, they attempted to confer the same night they filed their Motion, without giving Plaintiffs any opportunity to consider the substance of their arguments.

[2] Defendants do not move to exclude citations to the Trial tribunal's interpretation of Bolivian law. *See, e.g.*, Plaintiffs' Counterstatement of Material Facts ("CSMF") ¶ 338, Dkt. No. 351-1 (No. 08-cv-21063) (citing the Trial Judgment for the proposition that Article 20 of the Bolivian Code of Criminal Procedure defines the liability of both direct and indirect perpetrators, as well as co-conspirators who provide assistance without which the "'unlawful action could not have been committed.'"). The tribunal's interpretations of Bolivian law are relevant to this Court's determination of the content of Bolivian law and may be relied on by the Court for that purpose. *See* Fed. R. Civ. P. 44.1 ("In determining foreign law, the court may consider any relevant material or source, . . . whether or not . . . admissible under the Federal Rules of Evidence.").

[3] Exhibits cited herein ("Ex.") are attached to the Declaration of Joseph L. Sorkin in Support of Plaintiffs' Opposition to Defendants' Motion to Exclude Testimony From and All References to The Trial of Responsibilities in Bolivia. Each Defense Exhibit cited herein ("Def. Ex.") is

a transcript of short segments from a videotape of the witness's full Trial testimony, transcribed in the original Spanish and then translated into English.  The videotapes are available to be shown to the jury.  Plaintiffs produced a copy of the videotapes to Defendants in discovery.

Each of the third-party Trial witnesses was under oath.  *See, e.g.*, Ex. 8 at 1 (witness Carlos Mesa swore to tell the truth).  All six witnesses were subject to cross-examination by the Trial defendants.  *See* Ex. 1 (Human Rights Comm. Dec., No. 2491/2014, ¶ 9.10, U.N. Doc. CCPR/ C/120/D/2491/2014 (Aug. 21, 2017)) (noting Trial defendants were represented by counsel who were able to cross-examine witnesses).  Defendants in this case were originally defendants in the Trial, but were declared in default ("*rebeldes*") when they failed to appear for Trial.  *See* Def. Ex. R (DEF-0000925, at 959).  ██████████████████████

██████████████████████████████████████████████████

████████████

For the reasons explained below, this Court should deny Defendants' motion to exclude excerpts of testimony from the Trial of Responsibilities.

## ARGUMENT

Once the issue of the admissibility of Trial testimony excerpts is considered independently, much of Defendants' motion is rendered moot.  Defendants do not assert that the specific excerpts that Plaintiffs offered in support of their Opposition to the Motion for Summary Judgment are unreliable or unduly prejudicial.  Instead, they argue that irregularities in the Trial process render all testimony given at that Trial unreliable and prejudicial and that the excerpts are inadmissible hearsay.  Neither argument supports a decision to exclude reliable, relevant evidence that is not available through other means.

---

attached to the Declaration of Ana. C. Reyes in Support of Defendants' Motion to Exclude Material Concerning the 2009 Trial of Responsibilities in Bolivia.

## I.      Excerpts from Testimony Given at the Trial of Responsibilities Are Not Inherently Unreliable or Unduly Prejudicial

Almost as soon as the Defendants resigned and left Bolivia on October 17, 2003, dozens of people from many sectors of Bolivian society began to demand an investigation to determine legal responsibility for the military's killing of as many as 57 civilians and wounding of hundreds more.  Def. Ex. R at 940-946, 963-964.  Although Defendants portray this demand for an investigation and the Trial itself as a nefarious plot on the part of now-President Evo Morales, Morales was only one of approximately 40 prominent Bolivians to join the chorus calling for an investigation.  Mem. Law Supp. Defs.' Mot. Exclude Material Concerning Trial ("Mem.") at 1, 5; Def. Ex. R, at 963-964.  In October 2004, under then-President Carlos Mesa—who served as Defendant Gonzalo Sánchez de Lozada's running mate and Vice President and succeeded him when he resigned—Congress authorized a Trial of Responsibilities to bring to trial Sánchez de Lozada, military leaders, and government Ministers, including Defendant Carlos Sánchez Berzaín.  *Id*. at 965.  The Trial began in 2009 and ended in 2011.  *Id*. at 968-970.

Defendants' attack on the Trial focuses almost entirely on the lengthy effort to initiate a prosecution, with no assessment of how the Trial actually functioned or of the due process protections provided to the Trial defendants.  None of their allegations about the events that preceded the Trial cast doubt on the reliability of the sworn testimony at issue in this Motion. Defendants' only complaints about the Trial itself are based on the specious opinions of two of their own witnesses, who freely admitted that they had no personal knowledge at all about how the trial actually functioned.  *See* Def. Ex. C (Siles Dep. Tr.);[4] Def. Ex. D (Meruvia Dep. Tr.).[5]

---

[4] When asked the source of his knowledge about the Trial, Mr. Siles responded that he knew only what he had read in news reports or heard from a friend—a Trial defendant who "described how tiresome it was to travel from La Paz to Sucre all the time, and then he was sick, just some related to personal issues." Def. Ex. C at 208:10-12.  Mr. Siles stated that he was unaware of whether his friend was represented by a lawyer or had the right to cross-examine witnesses.

A complaint filed by two defendants who were convicted at the Trial produced the only detailed international law assessment of the validity of the Trial. *See* Ex. 1. In that decision, the U.N. Human Rights Committee ("HRC") rejected challenges to the Trial verdict and concluded that the proceedings complied with international human rights standards. Specifically, the HRC found that the Trial did not violate the Trial defendants' rights to due process; to be heard by a competent, independent, and impartial court; and to the presumption of innocence. *Id*. ¶¶ 9.5-10. The HRC also rejected the exact concerns raised by Defendants in this motion:

- The HRC ruled that the Bolivian government's decision to grant amnesty to civilian protesters did not violate the due process rights of the government officials who were prosecuted. *Id.* ¶ 9.7.[6]

- The HRC rejected claims of interference with the independence of the judiciary, noting that the judges who actually presided over the Trial were appointed by means of the regular appointment process and the absence of any evidence that political pressure impacted the judgment. *Id*. ¶ 9.5.

- The HRC rejected a complaint that the Trial judgment did not assess the individual accountability of each of the defendants or identify the specific deaths for which they were responsible:

  > The [Trial tribunal], after considering the evidence before it, concluded that the authors wilfully ordered, planned and supervised the deployment of military forces using lethal weapons under their command, while aware of the high level of risk entailed in using the armed forces to control social conflicts and while being kept abreast of the outcomes of that action; and that the judgment by which the authors were convicted specified the actual actions taken by the authors and the relationship that those actions bore to the deaths and injuries that resulted.

---

[5] Mr. Meruvia, over objection, stated his opinion about the invalidity of the Trial, and then said, without any indication of the source of his information, that the prosecutor at the Trial was "partial." Def. Ex. D at 117:18-118:8.

[6] As indicated by the text of the amnesty decree submitted as an exhibit by Defendants, the amnesty aimed to reverse the impact of a law enacted by the Defendants in August 2003 that had increased the criminal penalties for acts of social protest. Def. Exs. P, Q; *see* CSMF ¶ 224. Defendants bolster their criticism of the amnesty law with a litany of the alleged abuses committed by unnamed civilians, but, as they have done throughout this litigation, they offer no admissible evidence to support their allegations.

*Id.* ¶ 9.9 (noting that "persons who order the commission of the crime of genocide and the material authors of that crime are both held criminally responsible").[7]

- The HRC rejected an allegation that the Trial tribunal had not fully evaluated the evidence or the key witnesses, noting that the defendants were represented by counsel, were able to examine and cross-examine witnesses and to call their own witnesses, and had not identified any relevant witnesses who were not called or any evidentiary decisions that were arbitrary or unfair.  *Id.* ¶ 9.10.[8]

Other international bodies offered strong support for the Trial judgment when it was issued in August 2011.  The U.N. High Commissioner for Human Rights described the judgment as a "historic decision" that constituted "an important step in the fight against impunity."  Ex. 4 (Press Release, Office of The High Comm'r, UN Human Rights Chief Applauds Convictions of Ministers and Military for Serious Crimes in Bolivia, Cites "Healthy Trend" in Latin America, (Sep. 2, 2011)).  Human Rights Watch recognized the sentencing of the seven Trial defendants as a means to hold accountable those responsible for human rights violations and noted that there was "no credible evidence of government interference" in the trial.  Ex. 5 (Human Rights Watch, World Report 2012: Bolivia (2012)).  Amnesty International described the convictions as "an important victory for the families of those killed and injured…"  Ex. 6 (Amnesty Int'l, Bolivia: Former officials convicted over massacre (Aug. 31, 2011)).  Freedom House noted that "human rights organizations hailed" the decision of the Trial of Responsibilities.  Ex. 7 (Freedom House, Freedom in the World 2012: Bolivia (2012)).

---

[7] Although Defendants label the conviction of two government ministers as a "travesty," they make no effort to review the evidence relied on by the Trial tribunal.  *See* Mem. at 3.

[8] Defendants support their claim that the Trial was not fair by citing, as they did in their Motion for Summary Judgment, a preliminary report filed by three prosecutors in 2004 that came to different conclusions.  *See* Mem. at 2 (citing Def. Ex. N).  They ignore the fact that the prosecutors' report was disregarded by more senior prosecutors, and that it offers no evidentiary basis for its findings.  *See* Ex. 3 (MAMANI0023365T) (Resolution No. 091/04) (rejecting prosecutors' preliminary report); *see also* CSMF ¶ 27.  Defendants also rely on a letter that the same three prosecutors filed with the Inter-American Commission of Human Rights, *see* Mem. at 2 (citing Def. Ex. O), but there is no evidence in the record indicating that any international body accepted the allegations in that letter or even found the allegations sufficiently credible to initiate an investigation.

Defendants' motion makes clear that they strongly disagree with the Trial's judgment that military commanders and government ministers were criminally responsible for the deaths of dozens of Bolivian civilians—including Plaintiffs' family members—and injuries to hundreds more. A similar factual dispute will be the central issue in the pending trial in this case. However, that dispute is irrelevant to the current motion. Plaintiffs do not seek to admit into evidence the fact that a criminal trial took place in Bolivia or that Defendants' associates were convicted of genocide and criminal homicide. Excerpts from testimony given under oath at a Bolivian legal proceeding and that are directly relevant to the factual issues here can be admitted into evidence.[9] Nothing about the process leading up to the Trial or the conduct of the Trial itself renders excerpts from Trial testimony inadmissible.

## II.     Excerpts of Testimony from the Trial of Responsibilities Are Admissible under the Former Testimony Exception to the Hearsay Rule

Federal Rule of Evidence 804(b)(1) states that former testimony is not inadmissible hearsay if the declarant is unavailable and the testimony:

> (A) was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and
> (B) is now offered against a party who had—or, in a civil case, whose predecessor in interest had—an opportunity and similar motive to develop it by direct, cross-, or redirect examination.

The excerpts of Trial testimony at issue in this motion are admissible as former testimony under Rule 804(b)(1) given that (1) each declarant is "unavailable as a witness"; (2) the testimony "was given by a witness at a trial"; and (3) the testimony "is now offered against a party . . . in a civil case, whose predecessor in interest had . . . an opportunity and similar motive to develop it by direct, cross-, or redirect examination." Fed. R. Evid. 804(b)(1).

---

[9] To the extent the excerpts need to be introduced to the jury at trial, the Parties can craft language, subject to this Court's approval, that appropriately balances any evidentiary concerns.

Defendants do not contest the first two requirements.  The witnesses Plaintiffs relied on in their opposition to the Motion for Summary Judgment—Bolivian citizens living in Bolivia—are "unavailable at trial."  *See Mancusi v. Stubbs*, 408 U.S. 204, 211-12 (1972) (declarants residing in foreign countries are considered unavailable); *United States v. Drogoul*, 1 F.3d 1546, 1553 (11th Cir. 1993) ("[W]itnesses [who] are foreign nationals located outside the United States . . . are beyond the subpoena power of the district court.").  Defendants acknowledge that each of the testimony excerpts was given by a witness at a trial.  *See* Mem. at 8.

In this civil case, the only remaining question is whether the defendants in the Trial of Responsibilities were "predecessors in interest" of the Defendants who had "an opportunity and similar motive" to develop the specific testimony from that proceeding that Plaintiffs seek to admit.  Fed. R. Evid. 804(b)(1)(B).

### A.    The Governing Standard Under Rule 804(b)(1)(B) is "Similarity of Motive"

As Defendants' motion makes clear, courts have applied a "similarity of motive" test to determine whether parties are predecessors in interest.  Mem. at 10-11 (citing cases from the Second, Third, Fourth, Fifth, Sixth, Seventh and District of Columbia Circuits).  The Eighth and Tenth Circuits have also adopted this approach.[10]  *See O'Banion v. Owens-Corning Fiberglas Corp.*, 968 F.2d 1011, 1015 (10th Cir. 1992); *782 F. Fleet, Inc. v. Dreyfus Supply & Mach. Corp.*, 782 F.2d 1455, 1461 (8th Cir. 1986); 5 Joseph M. McLaughlin, *Weinstein's Federal Evidence* § 804 (2d ed. 2011) (courts have generally looked to similarity of motive to determine applicability of Rule 804(b)(1)(B)).[11]

---

[10] The Eleventh Circuit in *Hearn v. McKay* found it unnecessary to decide the proper interpretation of "predecessors in interest" because the former testimony at issue was cumulative of other evidence introduced at trial.  603 F.3d 897, 904 (11th Cir. 2010) (per curiam).

[11] Courts have expressly rejected Defendants' claim that the predecessor in interest test requires privity.  *Compare* Mem. at 10 *with, e.g.*, *Horne v. Owens-Corning Fiberglas Corp.*, 4 F.3d 276, 283 (4th Cir. 1993) ("privity is not the gravamen of the analysis."); *see also Athridge v. Aetna*

Although Defendants rely on the legislative history of Rule 804(b)(1)(B) to argue for a narrower view, the circuit courts have found support for their focus on "similarity of motive" from that same legislative history. *See Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 128 (4th Cir. 1995); *Clay v. Johns-Manville Sales Corp.*, 722 F.2d 1289, 1295 (6th Cir. 1983); *Lloyd v. Am. Exp. Lines, Inc.*, 580 F.2d 1179, 1184–86 (3d Cir. 1978); *see also Athridge*, 474 F. Supp. 2d at 115 (noting that, in light of ambiguous legislative history, courts have adopted a broader view of "predecessor in interest").[12] As the Third Circuit concluded, "[T]he previous party having like motive to develop the testimony about the same material facts is, in the final analysis, a predecessor in interest to the present party." *Lloyd*, 580 F.2d at 1187. In adopting the test developed in *Lloyd*, the Sixth Circuit noted that this is not an "'extravagant interpretation of who or what constitutes a "predecessor in interest, [but rather] one that is realistically generous over one that is formalistically grudging.'" *Clay*, 722 F.2d at 1295 (quoting *Lloyd*, 580 F.2d at 1185).

Defendants set forth in detail the proper method to conduct this analysis, but then fail to apply that method to the testimony at issue. *See* Mem. at 10-11. The initial question is whether the party at the prior proceeding had "an interest of substantially similar intensity to prove (or disprove) the same side of a substantially similar issue." *United States v. DiNapoli*, 8 F.3d 909,

---

*Cas. & Sur. Co.*, 474 F. Supp. 2d 102, 116 (D.D.C. 2007) ("The presence or absence of a legal relationship between the parties in the previous litigation and the parties in the present case is . . . not dispositive"). Defendants cite only one unpublished district court opinion that took a different approach. *See* Mem. at 10 (citing *Edwards v. Techtronic Indus. N. Am., Inc.*, 2015 WL 3616558, at *11 (D. Or. June 9, 2015)).

[12] The Third Circuit explained in *Lloyd* that the Senate adopted an amendment that added the "predecessor in interest" language to the requirement of a similar motive after noting that the difference "is not great." *Lloyd*, 580 F.2d at 1186 (quoting report of the Senate Committee on the Judiciary). This express statement from the Senate undercuts Defendants' reliance on the presumption that Congress used two terms because it intended the terms to have non-superfluous meanings. *See* Mem. at 12. That is, after all, just a presumption. Here, the Senate specified that it saw no significant differences between the terms.

914-915 (2d Cir. 1993) (en banc).  "[S]imilar motive does not mean identical motive."  *United States v. Miles*, 290 F.3d 1341, 1353 (11th Cir. 2002) (analyzing "similar motive" requirement in the context of a criminal trial, citing *United States v. Salerno*, 505 U.S. 317, 326 (1992) (Blackmun, J., concurring)).[13]  Crucially, motive must be analyzed in light of the specific testimony at issue.  *Id*. (highlighting need for "factual inquiry" into "the similarity of the underlying issues").  This is especially true where, as here, the "testimony will be limited to its relevance to" concrete issues in the case.  *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 505 F. Supp. 1190, 1290 (E.D. Pa. 1980), *aff'd in part and rev'd in part on other grounds*, 723 F.2d 238 (3d Cir. 1983).  "Additional issues or differences in regard to issues upon which the former testimony is not offered are of no consequence."  2 George E. Dix et al., *McCormick on Evidence* § 304 (7th ed. 2016).

### B.   The Trial Excerpts Are Admissible as Former Testimony Because the Defendants at the Trial of Responsibilities Had an Opportunity to Develop that Evidence and a Motive Similar to that of Defendants in This Action

Defendants fail to conduct any analysis of the six excerpts relied on by Plaintiffs in their Opposition to Summary Judgment.[14]  Their claim that differences between the Trial of Responsibilities and this proceeding render inadmissible *any* Trial testimony is unfounded.

Defendants fail to acknowledge that the Trial defendants had an interest that was "of substantially similar intensity" as that of Defendants here—and arguably far greater.  Trial defendants were five high-ranking military officers and two government ministers who were

---

[13] Overall, it is sufficient to show that a person with an interest similar to the current defendant had "an adequate motive for testing on cross-examination the credibility of the testimony now offered."  *McCormick on Evidence* § 304.

[14] In each of the cases Defendants cite, the courts analyzed the disputed testimony on an individual basis.  *See, e.g.*, *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156, 1161 (4th Cir. 1986) (court focused on the deposition of a specific witness and why an important distinction was not relevant in prior proceeding); *United States v. Feldman*, 761 F.2d 380, 385 (7th Cir. 1985) ("In determining whether a party had such a motive, a court must evaluate not only the similarity of the issues, but also the purpose for which the testimony is given.").

charged with genocide and homicide, as well as other crimes.  Each faced the possibility of lengthy prison terms.  Clearly, their interest in proving that the Bolivian military and civilian leadership was not responsible for the deaths was intense and at least as strong as Defendants' interest here in avoiding a civil money judgment.

Differences between the legal elements of Bolivian crimes and U.S. torts do not significantly impact the Trial defendants' motives in developing this specific testimony.  The motive to develop testimony must be similar, not identical.  *Salerno*, 505 U.S. at 326; *Miles*, 290 F.3d at 1352-53.  That the Trial defendants were not charged with extrajudicial killings as defined by the Torture Victim Protection Act is not dispositive—if it were, no testimony from a prior criminal proceeding could ever be introduced in a subsequent civil case arising out of the same facts.  In *Miles*, the Eleventh Circuit found the motive to develop testimony was similar between two proceedings despite the fact that the government had a broader theory of conspiracy in the second trial, because the evidence illustrated the defendant's relationship to a drug laboratory, "an issue pertinent to the charges in both trials."  290 F.3d at 1353.

Defendants focus on the charge of genocide and suggest that the Trial defendants therefore did not have to show that the killings were intentional.  However, they neglect to mention that *intentional* killing was included in the indictment.  Def. Ex. R, at 940-41 (quoting the indictment as specifying evidence of a "firm intention to deprive [the decedents] of the right to live.").  Defendants also point out that this case focuses on eight deaths, not the dozens of deaths and hundreds of casualties at issue in the Trial of Responsibilities.  *See* Mem. at 14-15. But neither the fact that the Trial defendants also faced other charges, nor the focus on more or less victims is relevant to this motion, given that none of the excerpts at issue refer to the circumstances of the individual deaths.

Defendants also claim the motives could not have been similar because "not a single [Trial] defendant in Bolivia served as the President or Defense Minister during the events in question." Mem. at 14. Not only are Defendants here looking for an identical motive in developing testimony, their argument is logically incoherent. The Trial defendants did not have incentives to "pass along blame up each rung of the ladder," as Defendants assert. *Id*. They had exactly the opposite incentive. Superior orders are not a defense in military law. *See, e.g*., Rome Statute of the Int'l Crim. Ct. art. 33, 2187 U.N.T.S. 90 (July 17, 1998, entered into force July 1, 2002). Thus, blaming Defendants Sánchez de Lozada and Sánchez Berzaín would have done nothing to absolve the Trial defendants of liability. All the Trial defendants were below Defendants Sánchez de Lozada and Sánchez Berzaín in the government hierarchy, as Defendants concede. *See* Mem. at 14. Because command responsibility makes superiors liable for the actions of their subordinates, it inverts the incentive structure for passing on blame: *All of the defendants in the Trial of Responsibilities had the incentive to pass blame down the ladder, not up to these Defendants*. If anything, their motives to deny elements of command responsibility such as knowledge were even stronger than those of the current Defendants, as they were lower in the hierarchy and thus even closer to the actors in the field.

The six excerpts Plaintiffs relied on to oppose Defendants' motion for summary judgment included testimony from military and civilian leaders of the government of Defendant Sánchez de Lozada. Two of those witnesses, Juan Veliz and Roberto Claros, were Trial defendants. Of the remaining four, Carlos Mesa was vice president, elected along with Sánchez de Lozada, and three were senior military or police officers. Each of the excerpts satisfies the standard set forth in Rule 804(b)(1)(B).

11

1.      Testimony as to the absence of a guerrilla force in Bolivia

In three of the excerpts, witnesses testified that there was no armed guerrilla movement in Bolivia in September and October 2003.  *See* Ex. 9 (excerpts from testimony of Jairo Sanabria Gonzales); Ex. 10 (excerpts from testimony of Jorge Botelo Monje); Ex. 11 (excerpts from testimony of Fernando Uribe Encinas).  None of these three witnesses were Trial defendants.  Each testified under oath and was warned that a failure to testify truthfully would constitute perjury.  Each was subject to cross-examination by the Trial defendants, who had a similar motive to discredit the witnesses as the Defendants in this case, in that they could have argued that the presence of a guerrilla force in Bolivia justified their actions.

2.      Testimony about an order to withdraw the police and place the military in charge of security in El Alto as of October 12

In one of the excerpts, a senior police official testified that, on October 10, 2003, the police were ordered to withdraw from any security function in El Alto and were replaced by the military.  *See* Ex. 9 (excerpts from testimony of Jairo Sanabria Gonzales).  He also testified that the police were not overwhelmed and could have continued to perform their duties, and that the police instructions had been to avoid extreme force.  As noted above, General Sanabria was not a Trial defendant and he testified under oath and under penalty of perjury.  He was subject to cross-examination by the Trial defendants, who had a similar motive to discredit the witnesses as the Defendants in this case in that (1) the presence of the military in El Alto was a key element in holding the military liable for the military's actions and (2) a valid security justification for the military incursion into El Alto could have helped justify their actions.

3.      Testimony that Defendant Sánchez de Lozada said that, as President and Captain General of the Armed Forces, he was responsible for what was happening

General Claros, one of the Trial defendants, testified that Defendants Sánchez de Lozada and Sánchez Berzaín visited headquarters after reports of civilian deaths in El Alto and that

Sánchez de Lozada said that he regretted the situation the country was facing, asked them to comply with presidential instructives, and affirmed that, as President and Captain General of the Armed Forces, he was responsible for what was happening in the country.  *See* Ex. 12 (excerpts from testimony of Roberto Claros Flores).  Defendants argue that any effort to place responsibility on higher officials in the command structure is self-serving.  *See* Mem. at 14.  However, evidence that someone higher in the chain of command took responsibility for the events of September and October 2003 would not lessen the legal responsibility of General Claros or his co-defendants, given that military officials cannot rely on higher orders as a defense to accusations of violations of the law.  Moreover, his co-defendants had an incentive to undermine his testimony, in that their liability might have been lessened if they could have proven that Claros acted alone, rather than pursuant to orders that applied to them as well.

4.      <u>Testimony that Defendant Sánchez de Lozada was informed that the use of the Armed Forces would lead to more deaths and learned of deaths in El Alto at around 4 pm on October 12</u>

Then-Vice President Carlos Mesa testified about a meeting with Defendant Sánchez de Lozada on October 12 at which Mesa told Sánchez de Lozada that if he sent the Armed Forces to confront civilians, "the risk of deaths is high" and, "in the end, the dead people will bury you, because the more people die, the more untenable this situation becomes."  During that meeting, at around 4:00 pm, a government spokesperson, looking "very alarmed," informed the President that nine people had already died that day in El Alto.  Mesa testified under oath and was warned that a failure to testify truthfully would constitute perjury.  The Trial defendants had a motive to develop this testimony that was substantially similar to that of Defendants in this case because (1) this testimony indicated knowledge of the illegality of the military actions undertaken by the government of Sánchez de Lozada, the very actions for which defendants were on trial in Bolivia, and (2) the two government ministers who were Trial defendants were prosecuted

because they signed the order that authorized the military actions in El Alto on October 12.  *See* Mem. at 3.

     5.     <u>Testimony that the Republic Plan was implemented between September 10 and 12, 2003; that Defendant Sánchez Berzaín, on behalf of Defendant Sánchez de Lozada ordered the military to transport people from Sorata; and that Sánchez Berzaín, over General Veliz's objections, insisted on traveling to Sorata on a military helicopter</u>

General Veliz testified about the date of implementation of the Republic Plan and Defendant Sánchez Berzaín's involvement in the military action in Sorata.  *See* Ex. 13 (excerpts from testimony of Juan Veliz Herrera).  General Veliz was a Trial defendant.  To the extent that implementation of the Republic Plan several days before roads were blocked in the vicinity of Sorata is problematic for Defendants in this case, it would have been equally problematic for General Veliz and the other co-defendants in the Trial, and they would have had the same motive to challenge it.  As noted above, evidence that people higher in the chain of command took responsibility for the events of September and October 2003 is not self-serving in that it does not lessen the legal responsibility of lower-ranking officials, given that military officials cannot rely on higher orders as a defense to accusations of violations of the law.  General Veliz's co-defendants had an incentive to undermine his testimony, in that their liability might have been lessened if they could have proven that General Veliz acted alone.

* * *

None of Defendants' objections to the proffered testimony reach this level of contextual analysis because they did not engage in the requisite factual inquiry and failed to analyze the purposes for which the testimony is being introduced.  Instead, Defendants rely on broad generalizations that do not adequately assess "the similarity of the underlying issues [and] the context of the . . . questioning."  *Salerno*, 505 U.S. at 326.  This Court should find that the testimony at issue falls within the "former testimony" exception to the hearsay rule.

14

### III. The Trial Testimony Excerpts Are Admissible Under Federal Rule of Evidence 807, the Residual Exception

Should the Court find that the Trial testimony is inadmissible under Rule 804(b)(1), then it should find the testimony admissible under the residual exception, *See* Fed. R. Evid. 807.[15] Defendants do not address this exception in their motion to exclude all testimony from the Trial of Responsibilities.

Rule 807 states:

(a) In General. Under the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804:
> (1) the statement has equivalent circumstantial guarantees of trustworthiness;
> (2) it is offered as evidence of a material fact;
> (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
> (4) admitting it will best serve the purposes of these rules and the interests of justice.

Each of these requirements is satisfied by the excerpts of Trial testimony.

### A. The Trial Testimony Excerpts, as a Whole, Demonstrate "Equivalent Circumstantial Guarantees of Trustworthiness"

The residual exception requires that the out-of-court statements have "equivalent circumstantial guarantees of trustworthiness." In fact, the testimony at issue here satisfies several of the "conventional indicia of reliability" long recognized by the Supreme Court, as detailed in *Chambers v. Mississippi*:

Out-of-court statements are traditionally excluded because they lack the conventional indicia of reliability: they are usually not made under oath or other circumstances that impress the speaker with the solemnity of his statements; the declarant's word is not subject to cross-examination; and he is not available in order that his demeanor and credibility may be assessed by the jury.

---

[15] The Eleventh Circuit has recognized that former testimony that does not satisfy the requirements of Rule 804(b)(1) may be admissible under the residual exception. *United States v. Deeb*, 13 F.3d 1532, 1536-37 (11th Cir. 1994).

410 U.S. 284, 298 (1973) (citing *California v. Green*, 399 U.S. 149 (1970)).  The goal of the

hearsay exceptions is to allow admission of statements "made under circumstances that tend to

assure reliability and thereby compensate for the *absence* of the oath and opportunity for cross-

examination."  *Id*. at 298-99 (emphasis added).  Here, however, four of the witnesses testified

under oath and were warned that they faced penalty of perjury.  The other two—criminal

defendants at the Trial of Responsibilities—were surely aware of "the solemnity of [their]

statements."  Each of the six witnesses was subject to cross-examination at trial by defendants

with interests parallel to those of Defendants here, as explained in the discussion of "similarity of

motive" in the prior section.  Finally, the testimony was videotaped, so that the jury will be able

to assess their demeanor and credibility as they testified.  *See KMS Rest. Corp. v. Wendy's Int'l,

Inc.*, 194 F. App'x 591, 599 (11th Cir. 2006) (noting that admission of a videotaped deposition

allowed the jury to determine for itself the deponent's credibility).

> **B.      Each of the Trial Testimony Excerpts Meets the Remaining Requirements of
> Rule 807**

As explained below, the specific Trial testimony excerpts that Plaintiffs relied on in

opposition to Defendants' Motion for Summary Judgment each satisfies the residual exception's

remaining requirements in that each is offered as evidence of a material fact and each is more

probative as to that fact than any other evidence available to Plaintiffs.

As to each of these excerpts, it would serve the goals of the rules of evidence and the

interests of justice to admit evidence of material facts that is more probative than anything else

Plaintiffs can obtain.

> 1.      Testimony as to the absence of a guerrilla force in Bolivia

Three of the Trial testimony excerpts address the material fact that there was no armed

guerrilla movement in Bolivia in September and October 2003.  *See* Ex. 9 (excerpts from

16

testimony of Jairo Sanabria Gonzales); Ex. 10 (excerpts from testimony of Jorge Botelo Monje); Ex. 11 (excerpts from testimony of Fernando Uribe Encinas). This is of material importance because Defendants used the presence of guerrilla groups to justify their use of military force in civilian neighborhoods. The witnesses—police or military intelligence officers and a commander of the police—were in a position to review intelligence reports and therefore to have knowledge as to the information available to the Bolivian military or police. Plaintiffs cannot obtain equivalent testimony from these witnesses—who are in Bolivia outside the subpoena power of this Court—or from any other witnesses.

       2.    <u>Testimony about the order to withdraw the police and place the military in charge of security in El Alto as of October 12</u>

General Sanabria testified that on October 10, 2003, the police were ordered to withdraw from any security function in El Alto and were replaced by the military; that the police could have continued to perform their duties; and that the police instructions were to avoid extreme force. This is material because Plaintiffs claim that Defendants and military officers under their command sent the military to El Alto without valid justification but rather with the intent of killing and injuring civilians as a means of deterring social protests. The testimony is more probative than any other evidence Plaintiffs can obtain in that he had firsthand knowledge of the orders given to the police and their ability to function effectively, and neither General Sanabria himself nor anyone else with this information is available to testify at a trial in this case.

       3.    <u>Testimony that Defendant Sánchez de Lozada said that, as President and Captain General of the Armed Forces, he was responsible for what was happening</u>

General Claros testified that the Defendants made a surprise visit to headquarters during which, in the context of a discussion of military concerns about civilian casualties, Defendant Sánchez de Lozada noted that he regretted the situation the country was facing, asked them to comply with presidential instructives, and affirmed that he was responsible for what was

17

happening in the country.  *See* Ex. 12 (excerpts from testimony of Roberto Claros Flores).  This evidence is of material importance because Defendants explicitly claim that they were not responsible for the civilian casualties or the military actions.  It is more probative than any other evidence that Plaintiffs can obtain because, as Commander of the Air Force, General Claros was one of only a few people in a position to hear such statements directly from Defendant Sánchez de Lozada.  To the extent that Defendant Sánchez de Lozada denies that he made these statements, he can challenge the testimony at trial.

████████████████████████████████████████████████████

████████████████████       Thus, in casting doubt on the reliability of General Claros's testimony, they make the implausible suggestion that Sánchez de Lozada paid General Claros's bills to support falsehoods that attempted to cast blame on Sánchez de Lozada.

       4.      <ins>Testimony that Defendant Sánchez de Lozada was informed that the use of the Armed Forces would lead to more deaths</ins>

Vice President Mesa testified to a meeting with Defendant Sánchez de Lozada on October 12 at which Mr. Mesa told him that if he sent in the armed forces, "the risk of deaths is high" and that a government spokesperson informed the Defendant that nine people had already died that day in El Alto.  This evidence is of material importance because Defendants deny that they had been warned that civilian casualties were the likely outcome of the use of military forces in civilian communities or that they had any reason to know that the civilian casualties were unlawful.  Mr. Mesa was in a unique position to testify as to statements by Defendant Sánchez de Lozada on that day.  His detailed account of this conversation, given under oath and under penalty of perjury, lends credibility to his recollection of the conversation.  To the extent that Defendant Sánchez de Lozada denies that this conversation occurred, he can challenge the testimony at trial.

5.      Testimony about implementation of the Republic Plan and about Defendant
        Sánchez Berzaín's actions on September 20

General Juan Veliz testified about the date of implementation of the Republic Plan and

Defendant Sánchez Berzaín's involvement in the military action in Sorata.  Evidence that the

Republic Plan was implemented several days before roadblocks made travel out of Sorata

difficult is of material importance because it contradicts Defendants' claims that they were

merely responding to problems caused by tourists allegedly trapped in Sorata.  His testimony

about Sánchez Berzaín's role in giving orders to the military is important because Sánchez

Berzaín insists that he had no operational authority over the military.  General Veliz was in

personal contact with Defendant Sánchez Berzaín on September 20 and thus in a unique position

to testify about Sánchez Berzaín's words and actions.  Plaintiffs have no other means to obtain

probative evidence on these points.  To the extent that Defendant Sánchez Berzaín denies that

this occurred, he can challenge the testimony at trial.  ██████████████████████

████████████████████████

## IV.     Rule 403 Does Not Require Exclusion of All References to the Trial of
##         Responsibilities

Defendants make the sweeping claim that *any* reference to the Trial of Responsibilities

and its judgment must be excluded because the prejudicial impact would outweigh any probative

value.  They do not address the relative probative or prejudicial value of the specific testimony

excerpts that Plaintiffs relied on in their opposition to Defendants' Motion for Summary

Judgment.  Nor do they acknowledge that they bear a heavy burden in seeking to exclude

evidence under Rule 403.  As the Eleventh Circuit has held, a decision to exclude evidence under

Rule 403 is "an extraordinary remedy" which should be used sparingly, "only when *unfair*

prejudice *substantially* outweighs probative value."  *United States v. King*, 713 F.2d 627, 631

(11th Cir. 1983) (emphasis in original).  "[T]he balance should be struck in favor of

admissibility," and courts must "maximiz[e] [the evidence's] probative value and minimiz[e] its undue prejudicial impact." *United States v. Alfaro-Moncada*, 607 F.3d 720, 734 (11th Cir. 2010).

In addition, the individual excerpts of testimony that Plaintiffs seek to introduce here are the most probative evidence available for the material facts they support. As Defendants noted in their Motion, *see* Mem. at 7, these excerpts are in several cases the only evidence Plaintiffs have been able to gather to support specific facts. The Eleventh Circuit has recognized that "the more essential the evidence, the greater its probative value, and the less likely that a trial court should order the evidence excluded." *King*, 713 F.2d at 631 (footnote omitted).

In the absence of any explanation from Defendants of why this highly probative evidence should be excluded, Defendants' reliance on Rule 403 is misplaced.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Exclude Material Concerning the 2009 Trial of Responsibilities in Bolivia should be denied.

Dated: January 19, 2018
      Miami, Florida

Respectfully submitted,

By*:*   */s/ Ilana Tabacinic*
Ilana Tabacinic (Florida Bar No. 57597)
AKERMAN LLP
Three Brickell City Centre
98 Southeast Seventh Street, Suite 1100
Miami, FL 33131
Tel: (305) 374-5600
Fax: (305) 374-5095
Email: ilana.tabacinic@akerman.com

*Counsel for Plaintiffs*

*Counsel for Plaintiffs*

| | |
|---|---|
| Ilana Tabacinic (Florida Bar No. 57597)<br>AKERMAN LLP<br>Three Brickell City Centre<br>98 Southeast Seventh Street, Suite 1100<br>Miami, FL 33131<br>Tel: (305) 374-5600<br>Fax: (305) 374-5095<br>Email: ilana.tabacinic@akerman.com | Steven H. Schulman (*pro hac vice*)<br>AKIN GUMP STRAUSS HAUER & FELD LLP<br>Robert S. Strauss Building<br>1333 New Hampshire Avenue NW<br>Washington, DC 20036<br>Tel:  (202) 887-4000<br>Fax: (202) 887-4288<br>E-mail: sschulman@akingump.com |
| Judith Brown Chomsky (*pro hac vice*)<br>CENTER FOR CONSTITUTIONAL RIGHTS<br>Post Office Box 29726<br>Elkins Park, PA  19027<br>Tel:  (215) 782-8367<br>Fax:  (215) 782-8368<br>E-mail: judithchomsky@icloud.com | Joseph L. Sorkin (*pro hac vice*)<br>Jennifer L. Woodson (*pro hac vice*)<br>Saurabh Sharad (*pro hac vice*)<br>Christine Doniak (*pro hac vice*)<br>Harley Raff (*pro hac vice*)<br>AKIN GUMP STRAUSS HAUER & FELD LLP<br>One Bryant Park<br>Bank of America Tower<br>New York, NY 10036-6745<br>Tel:  (212) 872-1000<br>Fax: (212) 872-1002<br>E-mail: jsorkin@akingump.com<br>E-mail: jwoodson@akingump.com<br>E-mail: ssharad@akingump.com<br>E-mail: cdoniak@akingump.com<br>E-mail: hraff@akingump.com |
| Beth Stephens (*pro hac vice*)<br>CENTER FOR CONSTITUTIONAL RIGHTS<br>666 Broadway<br>Seventh Floor<br>New York, NY 10012<br>Tel:   (212) 614-6431<br>Fax:  (212) 614-6499<br>E-mail: beth.stephens@rutgers.edu | Zak Franklin (*pro hac vice*)<br>Erica Abshez Moran (*pro hac vice*)<br>AKIN GUMP STRAUSS HAUER & FELD LLP<br>1999 Avenue of the Stars, Suite 600<br>Los Angeles, CA 90067<br>Tel:  (310) 229-1000<br>Fax: (310) 229-1001<br>E-mail: zfranklin@akingump.com<br>E-mail: emoran@akingump.com |
| David Rudovsky (*pro hac vice*)<br>KAIRYS, RUDOVSKY, MESSING &<br>FEINBERG LLP<br>718 Arch Street, Suite 501 South<br>Philadelphia, PA 19016<br>Tel: (215) 925-4400<br>Fax: (215) 925-5365<br>E-mail: drudovsk@law.upenn.edu | Rubén H. Muñoz (*pro hac vice*)<br>Jason Weil (*pro hac vice*)<br>AKIN GUMP STRAUSS HAUER & FELD LLP<br>Two Commerce Square<br>2001 Market Street, Suite 4100<br>Philadelphia, PA 19103<br>Tel:  (212) 965-1328<br>Fax: (215) 965-1210<br>E-mail: rmunoz@akingump.com<br>E-mail: jweil@akingump.com |

| | |
|---|---|
| Paul Hoffman (*pro hac vice*)<br>SCHONBRUN, SEPLOW,<br>HARRIS & HOFFMAN, LLP<br>723 Ocean Front Walk<br>Venice, CA 90201<br>Tel: (310) 396-0731<br>Fax: (310) 399-7040<br>E-mail: hoffpaul@aol.com | Tyler R. Giannini (*pro hac vice*)<br>Susan H. Farbstein (*pro hac vice*)<br>Thomas Becker (*pro hac vice*)<br>INTERNATIONAL HUMAN RIGHTS CLINIC,<br>Human Rights Program<br>Harvard Law School<br>Pound Hall 401, 1563 Massachusetts Avenue<br>Cambridge, MA 02138<br>Tel: (617) 495-9362<br>Fax: (617) 495-9393<br>E-mail: giannini@law.harvard.edu<br>E-mail: sfarbstein@law.harvard.edu<br>E-mail: thomasbainbecker@gmail.com |

**CERTIFICATE OF SERVICE**

I hereby certify that on January 19, 2018, I electronically filed the foregoing documents

with the Clerk of the Court using CM/ECF.  I also certify that the foregoing documents are being

served this day on counsel of record in the attached Service List either via transmission of Notice

of Electronic Filing generated by CM/ECF or via e-mail.

*s/ Ilana Tabacinic*
_____
Ilana Tabacinic

## <u>SERVICE LIST</u>

Ana C. Reyes
Stephen D. Raber
James E. Gillenwater
Suzanne M. Salgado
Giselle Barcia
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC  20005
(202) 434-5000
(202) 434-5029 (facsimile)
areyes@wc.com
sraber@wc.com
jgillenwater@wc.com
ssalgado@wc.com
gbarcia@wc.com

Evan B. Berger
Becker & Poliakoff, P.A.
1 East Broward Blvd., Suite 1800
Ft. Lauderdale, FL  33301
(954) 364-6055
(954) 985-4176 (facsimile)
eberger@bplegal.com